## Forks Township *versus* King.

1. The owner of a horse, lent without hire, is responsible for the negligence of the borrower, and if the negligence of the latter contributed to an accident whereby the horse was killed, the owner cannot recover.

2. K. brought an action against a township to recover damages for the death of his horse, which he had loaned to H. to use in the latter's team, and which he alleged was killed by the unsafe condition of defendant's road. To show that the negligence of H. contributed to the accident the defendant offered to prove that H. was informed of the dangerous condition of the road, and that he was acquainted with another and safer road leading to the same point, which offer the court rejected. *Held*, that this evidence should have been received.

[Forks Township v. King.]

March 31st 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Sullivan county* : Of July Term 1875, No. 49.

Case brought by King against Forks township to recover damages for the value of his mare, alleged to have been killed by the negligence of defendant's officers in not keeping the highway in safe condition.

Plea, " Not guilty."

The plaintiff loaned the mare to Ellis Hoagland to use in his team. The other material facts, together with the offers of evidence made at the trial before Elwell, P. J., are stated in the opinion of this court.

The fifth and seventh points of the defendant and the answers of the court were as follows :—

5. If the driver of the team was informed of the dangerous condition of the road before he reached the point where the accident occurred, and knew of another road leading to the same place, which was safer, ordinary prudence required him to take the safest road; and if he failed to do so, he negligently contributed to the injury, and the plaintiff cannot recover.

Answer. " I decline to affirm this point. The only information which the evidence shows the teamster had, consists of his knowledge of the road generally on that day in regard to ice, and the statements of Mr. Bird and Mr. Landon. Bird does not appear to have known more of the condition of the road than Hoagland, who had travelled twenty miles that day, and Landon made but a general statement that it was icy down the hill. I cannot charge that it was negligence to attempt to go over the road because of such information, but submit, as a question to the jury, whether under all the evidence, looking at matters from the standpoint of the teamster before the accident, it was negligence for him to attempt to drive the road. There is no evidence that he knew of a safer road."

7. If the jury believe that the plaintiff, or the person in charge of his team, was informed previous to the accident, by any person, that the hill where the accident happened was icy, and that he was in danger of going off, and did not take more than ordinary care at that point to prevent going off, the plaintiff is not entitled to recover.

Answer. " As the road was left open by the public authorities, thereby in effect declaring that it was safe to travel, I decline to charge, as a matter of law, that the information testified as having been given to Hoagland required of him more than ordinary care."

The verdict was for the plaintiff for $59.30. After judgment the defendant took this writ, and assigned for error the rejection of the evidence offered and the answers to the foregoing points.

*E. M. Dunham*, for plaintiff in error.—When the plaintiff knew of a perfectly safe road running side by side with the dangerous one, it was negligence in him not to take the former, and the evidence that Hoagland knew of such a safe road should have gone to the jury to determine the question of contributory negligence: Whart. on Neg., sect. 400, and cases cited.

*H. W. Patrick*, for defendant in error.—A township is bound to keep its highways in repair at all times, and cannot suffer them to fall into decay, and compel travellers to choose between making long detours or the risks of accident. An open highway is an invitation to the public to travel upon it, and the fact that the traveller knows it is dangerous does not make it his duty to choose another route: Humphreys *v.* Armstrong County, 6 P. F. Smith 204; Pittsburgh *v.* Grier, 10 Harris 54.

The owner of a horse lent without hire is not responsible for the negligence of the borrower, and as there was no relation of master and servant between the plaintiff and Hoagland, the former cannot be affected by the negligence of the latter, if it did contribute to the accident: Bard *v.* Yohn, 2 Casey 482.

Mr. Justice WOODWARD delivered the opinion of the court, May 8th 1876.

This action was brought by the plaintiff below to recover damages for the loss of a mare belonging to him, in the possession of Ellis Hoagland, caused, as was alleged, by the unsafe condition of the road over which she was being driven. Hoagland, with this mare and another horse of his own, hitched to a loaded wagon, was returning from New Albany to Forksville on the 24th of February 1872. In descending a mountain four or five miles from Forksville, along a dug-way, the wagon slid off the road, dragging the horses with it, and the mare of the plaintiff was killed either by the fall or by choking to death before she was extricated. The road was ten or twelve feet wide, and the upper side was from six to ten inches higher than the lower, with a uniform descending inclination from the bank to the edge on the lower side. At this point there were no guard-logs along the edge for a distance of thirty or forty feet. There was a spring on the upper side with a sluice-way across, partially stopped up, and the water flowed over the highway and froze on its surface. Rain had fallen the day before the accident, the weather had become suddenly cold and ice had formed to an extent to make travelling dangerous. For ten days previously, however, there was evidence that ice had been accumulating, and it was alleged that the duty of the supervisors to keep the highway in a safe condition had been wholly neglected.

On the trial the defendant's counsel offered in evidence " a draft of the roads in the vicinity of where the accident happened, to be

[Forks Township *v.* King.]

followed by evidence that Hoagland knew of other roads than the main road taken by him, and that he had heard of the condition of the road which he travelled." The court admitted the evidence to show Hoagland's knowledge of the condition of the road he took, and rejected that relating to the existence of other roads. The defendant subsequently proposed " to prove that at the time of the accident Hoagland knew of the road leading from Michael Corcoran's to Millview, by way of Molyneux, and that he knew it was a safe road." This evidence also was rejected. When this second offer was made, testimony had been given to show that Hoagland had been informed of the condition of the main road. William Bird had said he " told him he would be apt to go off the road before he got down the hill," and " that it was so icy it would be dangerous to go down the hill." And Truman Landon had sworn that he had told Hoagland that the hill was very icy. This evidence might not have proved to be very significant if it had been submitted to the jury in connection with that which the court rejected. It may be, too, that the taking of another road, even if perfectly safe, would have involved so much of delay, distance or other inconvenience as to justify Hoagland in keeping on the main highway. But these were questions for the jury to decide. A person who knows a defect on a highway and voluntarily undertakes to test it when it could be avoided, cannot recover against the municipal authorities for losses incurred through such defect : Whart. on Neg., sect. 440. Thus, if it appear that there is danger in treading on a piece of ice and the plaintiff voluntarily and unnecessarily undertakes to walk over it, when he could plainly see it and easily avoid it, and falls and breaks a limb, he is precluded from recovery : Durkin *v.* The City of Troy, 61 Barb. 437. In going from Forksville to New Albany in the morning, Hoagland had taken what the witnesses called the Campbellville road. Having found that icy, he took in returning the road on which the accident happened. Of the condition of the latter at the time, therefore, he had no personal knowledge. But if he had warning that it was dangerous, and knew that by reasonable precaution the danger could be avoided, prudence required that such precaution should be taken. The evidence should have been received, and the effect of it, in its connection with the testimony of Bird and Landon, it would have been for the jury to consider and decide.

The general charge was unobjectionable, and there was no error in any of the answers that were given to the points, in view of the evidence admitted, to require a reversal of the judgment. Without other facts, the court would not have been justified in instructing the jury, in answer to the defendant's fifth point, that, upon the statements of Bird and Landon, the neglect of Hoagland "to take the safest road" was contributory negligence, when evidence of the existence of any other road than the main highway had been

[Forks Township *v.* King.]

excluded, and it had been shown that the supervisors had left that highway open.  Nor would those statements have warranted the instruction asked in the seventh point, that the information he had received made it his duty "to take more than ordinary care."  He was bound to use all the precautions against danger which a cautious and prudent man would use in the circumstances by which he was surrounded.  In the course of the answers to the points the jury were in effect so charged.

Judgment reversed and *venire facias de novo* awarded.