## C. A. HILL v. TOWNSHIP OF TIONESTA.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF FOREST COUNTY.

Argued October 8, 1891—Decided January 4, 1892.

[To be reported.]

1. One who undertakes to use a public road, knowing that it is unsafe and knowing the defects which make it so, but not choosing to avoid them, although he could do so by taking another road, cannot recover against the township for an injury resulting from such defects.
2. In such a case, when the facts are undisputed, the inference of contributory negligence is an inference of law which it is the duty of the court to declare; and on request so to do, the court should give the jury binding instructions to render a verdict for the defendant.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 229 October Term 1891, Sup. Ct.; court below, No. 9 December Term 1889, C. P.

On October 16, 1889, C. A. Hill brought trespass against Tionesta Township, to recover damages for injuries to the plaintiff's horse, alleged to have resulted from negligence on the part of the defendant township. * The defendant's plea was not guilty.

At the trial, on December 18, 1890, the following facts were shown:

For many years a public road had been in existence and in use along the west bank of the Allegheny river within the limits of the defendant township. It occupied a narrow strip of ground, bounded, on the side away from the river, by a steep bank. In 1866, a railroad was constructed along the river, in many places encroaching upon the bed of the township road.

At the time and place of the accident to the plaintiff's horse,

---

* In a prior suit for the same cause of action, commenced before a justice of the peace and brought into the court below by appeal, the plaintiff recovered a judgment, which, on appeal to the Supreme Court to No. 63 October Term 1889, was reversed for want of jurisdiction in the justice: Hill v. Tionesta Tp., 129 Pa. 525.

Statement of Facts.

the latter road was so narrow that there was room for but a single wagon track between the ends of the railway ties and the river bank, and in using it the wheels of a vehicle would pass within one foot of the edge of that bank. The surface of the roadway was about three feet below the level of the railway track, and about sixteen feet above the river. There was no barrier or guard on the river side of the road. The roadway was in bad condition, deep ruts having been worn in it by the travel upon it.

In December, 1887, the plaintiff had occasion to haul a number of loads of lumber between two points connected by the said road. The weather at that time was freezing at night and thawing in the daytime. After safely sending two loads over another road, from one and one half to two miles longer than the road in question, and several loads over this road, he sent a team with a heavy load of lumber by the latter road, in charge of his brother, George T. Hill. While passing along the narrows, at the place between the railroad and the river above described, one of the horses stepped into a deep rut or hole in the wagon track, and in the endeavor to extricate itself fell over the river bank and was injured. The driver testified that he had not seen this rut until the horse got into it, although he had hauled several loads over that road within two or three days.

The plaintiff and his drivers testified that the road, at the place of the accident, had for sometime been known to them to be in a dangerous condition, and was regarded by them as an unsafe road to drive on. Parts of their testimony on this subject are quoted in the opinion of the Supreme Court, infra.

William Hood, a witness for the defendant, testified that before the plaintiff's teams commenced hauling lumber, the plaintiff spoke to the witness, under the impression that the latter was one of the road commissioners of the township, and asked him to fix the road, stating that he had been over it and found it in bad condition and would like to have something done to it, as he was about to do some hauling over it; that the witness remarked that a man would be crazy who would undertake to do hauling over that road, and advised the plaintiff to take the other one, but the plaintiff said it was too far around and he would rather take his chances on this road. The plaintiff was not called to deny this conversation.

Charge of Court below.

In the plaintiff's rebutting case, George T. Hill who had testified in plaintiff's case in chief to having hauled a load over the other road, prior to the trip on which he met with the accident, was recalled and testified that a part of the other road referred to was in very bad condition: " Q. Was it a dangerous road ? A. Yes, sir. Q. How was it as compared with the road along the narrows here, as to danger ? A. I considered it more so ; I was afraid to drive it, it was very sideling, and parts of it very bad. Q. Was this before or after the injury ? A. Before." On cross-examination, the witness stated that he and Truman Hill, plaintiff's other teamster, first hauled several loads over the river road, and then hauled one load each over the other road, after which they went back to the river road.

At the close of the testimony, the court, BROWN, P. J., charged the jury in part as follows:

The principal question is the right of the plaintiff to recover, and [I will say a word in regard to that road, which perhaps ought to have no influence upon you, but I think it a matter of interest to the public. It appears that many years ago, just how many I don't know, the railroad took possession of a public road in Tionesta township. The law provides a method by which the officers of the township may compel the railroad,—no matter at what cost, and I think no matter after what expiration of time,—to build a road equally as good as the road that they took. It does not appear that any steps have been taken, as against the railroad, to enforce that duty. So far as appears, the railroad corporation has taken possession of a road that belongs to the public of Tionesta township. It was opened for the use of the inhabitants of the commonwealth, and they have taken it without making it good to the township. This is the outside of the case, but I speak of it as indicating the rights that, in my judgment, the township have against the railroad.] [1] . . . . .

The first question of fact that seems to be disputed is the question of negligence on the part of the road commissioners, or negligence on the part of the township. . . . . And we say to you that if the road commissioners of a township, or if the township itself, which is the same thing, takes all its resources and places them on certain roads, without making a fair dispo-

Charge of Court below.

sition of the funds, then they are guilty of negligence. Now, [you are to determine whether the township authorities were wanting in taking proper care of this road. If they were, and the injury to Mr. Hill's horse resulted from the bad condition of the road, and that from the want of care by the road commissioners of the township, then the township is liable,] [2] unless the plaintiff, himself, has been guilty of contributory negligence. . . . . [You are to determine in the first place, this question: Did the injury to the plaintiff's horse result from the neglect of the defendant to keep the road in proper condition?] [2] . . . . .

It is said on the part of the defendant that there was another road that the plaintiff might have taken. In determining whether he should have taken that road or not, we come back to the other question, as I have stated it: Would an ordinarily prudent man take the other road, of which you have heard the evidence, or would he take the road down the river? It does appear from the testimony that many, at least, drove over the river road; that it was used by the public. Should Mr. Hill's driver have ventured upon the road at all? Was it an act of recklessness, or was it doing what ordinarily prudent men did? If it was simply that, then there could be no contributory negligence charged to the plaintiff. If, knowing the road was dangerous, and that there was a better road, one less dangerous and equally good and safer, you may conclude, but that is for you, that that road ought to have been taken. In determining this, you will take in consideration the condition of that road; you have the testimony before you as to that. . . . .

The defendant requests the court to charge:

2. The plaintiff and his driver having both testified that the road or place where the accident occurred was unsafe and dangerous at the time of the accident, and had been for a long time before, and that they knew its condition both before and at the time of the accident; and, it appearing from their evidence they knew that there was another road which they might have traveled in safety, they should have taken the safe road, and when they did not, the verdict of the jury should be for the defendant.

Answer: This point is refused. It asks the court to deter-

Charge of Court below.

mine questions of fact belonging to the jury ; but, we may say as we have said in the general charge, that if the condition of the road, at the time of the accident, was such that an ordinarily careful man would not have driven his team over it; or, if it appears that the road was dangerous and a person of ordinary prudence and care would have taken the other road of which evidence has been given, then the plaintiff would not be entitled to recover.[4]

3. It appearing from the evidence that the plaintiff, a short time before driving his team on this road, notified Wm. Hood, whom he supposed to be a road commissioner at the time, that he had some hauling to do with his team over this road, and that the road was dangerous and in an unsafe condition, and wanted him to repair it ; that, being told by Mr. Hood that if it was dangerous he had better not go on it with his team, he replied, " I'll go on it and take my own chances," he thus released the township, and the verdict should be for the defendant.

Answer: This point is affirmed; provided, and only provided, you find from the evidence that the plaintiff was reckless in driving over the road, or wanting in ordinary prudence in venturing upon it.[5]

6. Under all the evidence in the case, the verdict should be for the defendant.

Answer : This is answered in the negative.   We leave it to the jury, under the instructions that we have given in the general charge and answers to the points, to determine whether the verdict shall be in favor of the plaintiff or defendant. [6]

7. Unless the jury find that the defendant was negligent in not repairing the rut that plaintiff says caused the accident, there can be no recovery.

Answer: This point is answered in the affirmative ; but we say that if the defendant was negligent in not looking after the condition of the road, which was their duty, and the rut was occasioned in consequence of such negligence, by their oversight, or their want of attention to it, then the plaintiff may recover.[7]

—The jury returned a verdict for the plaintiff for $116.66. A rule for a new trial having been discharged, Noyes, P. J., and judgment entered, the defendant took this appeal, assigning inter alia for error:

Opinion of the Court.

1, 2. The parts of the charge embraced in [ ] [1] [2]
4–7. The answers to defendant's points.[4 to 7]

*Mr. T. F. Ritchey,* for the appellant:

The relations between the township and the railroad company were improperly injected into the case. The charge on this subject was prejudicial to defendant, notwithstanding the judge said that it had nothing to do with the case. All the facts stated in the defendant's second point were proved by plaintiff's witnesses, and it was the duty of the court to affirm the point: New York etc. R. Co. v. Lyons, 119 Pa. 324; Post v. Railroad Co., 108 Pa. 585; Forks Tp. v. King, 84 Pa. 230; Durkin v. Troy City, 61 Barb. 437; Erie City v. Magill, 101 Pa. 616; Pittsburgh etc. Ry. Co. v. Taylor, 104 Pa. 306; Butterfield v. Forrester, 11 East. 60; Lehigh V. R. Co. v. Greiner, 113 Pa. 600; McDonald v. Coal Co., 135 Pa. 1; Readdy v. Shamokin Bor., 137 Pa. 92; Long v. Milford Tp., 137 Pa. 122; Robb v. Connellsville Bor., 137 Pa. 42; Fleming v. Lock Haven City, 15 W. N. 216; Graham v. Penna. Co., 139 Pa. 149. The defendant's third and sixth points should likewise have been affirmed, and nothing left to the jury: Delaware etc. R. Co. v. Cadow, 120 Pa. 559. And it was error to qualify the affirmance of defendant's seventh point.

*Mr. E. L. Davis,* for the appellee:

It is clear from the testimony of George T. Hill that he had tried both roads, the river road first and then the other road, and was compelled, as a matter of necessity, to take the river road as the better of the two. Certainly there was no contributory negligence in selecting what he regarded as the better of two dangerous roads. That he knew of the general dangerous condition of the road in question, is not disputed, but he also knew, by personal experience, of the even worse condition of the other. In these circumstances, the question of contributory negligence was for the jury: Burrell Tp. v. Uncapher, 117 Pa. 353; West Mahanoy Tp. v. Watson, 116 Pa. 344; McCully v. Clarke, 40 Pa. 406; Millcreek Tp. v. Perry, 20 W. N. 359.

OPINION, MR. JUSTICE GREEN:

The only question that needs consideration in this case is

Opinion of the Court.

the alleged contributory negligence of the plaintiff in sending out his team over the road in question. It was proved by the witnesses on both sides that the road was extremely narrow in places, that the wagon track at the place of the accident was within a foot of the edge of the bank, and that the descent of the bank to the river was about fifteen feet. The plaintiff's mare stepped into a deep rut or hole with one of her feet, and was injured by falling over the bank while her foot was fast in the hole or rut. It was proved by the plaintiff's witnesses that the road was much cut up with ruts and holes, and that the surface was freezing at night, and thawing in the daytime.

The defendant's second point asked for a binding instruction, upon the testimony of the plaintiff and his witnesses, that there could be no recovery, because the plaintiff and his driver both testified to the unsafe and dangerous condition of the road, that they were both acquainted with its condition before and at the time of the accident, and that they knew of another road, by taking which the dangers of this road could be avoided. The court declined to affirm the point, saying it asked the court to determine a question of fact, which belonged to the jury. Of course, if there was doubt about the contributory negligence of the plaintiff, the question should have gone to the jury; but the point claimed that there was no doubt on this subject, because the plaintiff himself, and his witnesses, also, testified to the fact of his and their knowledge of the dangerous condition of the road, and that the plaintiff used the road notwithstanding such knowledge. If the facts stated in the point were true, and there was no contest about them, then the inference of contributory negligence was an inference of law which it was the duty of the court to declare. We have therefore, simply to examine the testimony, and see if it supported the contention of the defendant contained in the point.

The plaintiff, having testified that he knew the road for many years, and had often traveled over it, was asked: "Q. What was the condition of that portion of the road where the horse was hurt? A. It was very narrow, and deep holes in the road. . . . . Q. Wasn't it a safe road to drive on? A. I didn't call it a safe road; it was unsafe, I considered it. Q. Was it an unsafe road to drive on? A. Yes, sir. Q. Was

Opinion of the Court.

it dangerous to haul such loads as you hauled over it?   A. No more dangerous in hauling those than any others, that I know of; I didn't call it a safe road at all.   Q. For any hauling? A. For any hauling.   Q. How long had you known it not to be safe?   A. I had been over the road a short time before we commenced hauling; I knew that the road was an unsafe road for some time.   Q. You say, a short time before you began hauling you were along the road, and knew it was not a safe road?   A. Yes, sir. . . . . . Q. At the time you had this hauling done, you knew it was an unsafe road?   A. I knew it was an unsafe road; of course I did."   George T. Hill, the plaintiff's brother and teamster on this occasion, testified to the occurrence of the accident by the mare getting her foot in the hole in the road, and falling over the bank while her foot was fast.   He was asked: "Q. State the condition of that road. A. Well, it was narrow; the outside track was about a foot from the bank; the inside track was about five or six feet from the railroad; the end of the ties, I should judge, was about two and one half or three feet from the bed of the road. Q. Could you have driven any closer to the railroad than you did?   A. No, sir; I could not."   On cross-examination, he said he had hauled three or four loads over the road before the one at which the accident had occurred, and was asked: "Q. Was the road in good condition?   A. I didn't think it was.   Q. Do you say it was a dangerous road?   A. I said it was not very safe.   Q. Was it an unsafe road?   A. It was unsafe at that time, I think."

Truman Hill, the plaintiff's son, was also hauling with another team at the time of the accident.   He described the accident, and was asked: "Q. What was the cause of the accident?   A. The road being bad.   Q. In what way was it bad?   I wish you to state exactly the whole situation.   A. It was rough, narrow, and full of holes all along, pretty much all the way.   Q. State whether the road was wide there at the place of the accident, or whether it was narrow.   A. It was narrow; it was about a foot from the outside wagon track to the bank, and probably six inches from the inside wheel track to the bank next the railroad.   Q. Was there any way to evade that or go around it?   A. No, sir. . . . .   Q. From the condition of that road where this accident happened, and other

places, was it a safe road to travel, or dangerous? A. Well, it was not a safe road." On cross-examination, he was asked: " Q. What was the condition of this road as to being a safe or an unsafe road, the river road? A. I would call it an unsafe road. Q. How long had it been unsafe? A. Ever since I knew it, thirteen or fourteen years now. Q. Why was it unsafe? A. Because it was narrow; if a horse made a misstep, it was likely to go over the bank. Q. Wasn't that a pretty good road there? A. No, sir; it was not what I would call a good road. Q. You would not say it was an unsafe road, would you? A. Well, I think it was."

It will at once be seen from the foregoing testimony that the plaintiff and both of his teamsters were thoroughly acquainted with the road, its defects, and its unsafe, and indeed dangerous character. They knew that there were holes and ruts in the road. They knew the extreme narrowness of the road, so that at the point where the accident occurred there was but a single track to travel in, and that the bank was only a foot distant from the outside wheel. The accident happened in consequence of conspicuous defects which were perfectly manifest, and the injury was sustained in the very way that might have been expected, to wit, by the mare falling over the bank upon the verge of which she was walking.

The plaintiff testified that he had complained about the condition of the road to one of the road commissioners a few days before he commenced hauling, and wanted him to fix it. One who had been a commissioner, a Mr. Hood, testified that the plaintiff had spoken to him about the road as if he were still a commissioner, a very few days before the plaintiff commenced hauling, and wanted him to fix the road. He further said that he told Hill that "a man must be crazy to undertake to do hauling on that road;" that he (the witness) had done all he could do on that road; and that he advised Hill to go around by the other road, to which Hill replied "he would sooner take his chances on this road than go around." The plaintiff did not deny this conversation, and there was no reason to question its credibility. The testimony simply confirmed what was already fully proved, as to the plaintiff's knowledge of the defects of the road, and further showed that he intended to take the risks of the road, and would do so in preference to going

Opinion of the Court.

around by the other road.  It was proved by undisputed testimony on both sides that there was another road, somewhat longer, over which the hauling could be done, and as to a few of the earlier loads was done, without incurring the risks which were so very manifest on this road.  The case is plainly brought within a long line of decisions which establish as an inference of law the contributory negligence of the plaintiff.  A slight reference to a very few of them will be sufficient.

In Forks Tp. v. King, 84 Pa. 230, we said: " A person who knows a defect on a highway, and voluntarily undertakes to test it when it could be avoided, cannot recover against the municipal authorities for losses incurred through such defect: Whart. on Neg., § 440." In Pittsb. etc. Ry. Co. v. Taylor, 104 Pa. 306, the same doctrine was applied in circumstances much less forcible than in the present case.  The present Chief Justice, in delivering the opinion, said: " A man is as much bound to avoid a known danger on a public highway as anywhere else.  Such obstructions are liable to occur.  The person or persons by whose negligence they have been placed there, or suffered to remain, may be liable in damages to the parties injured thereby, where they have used reasonable care to avoid such injury ; but it would be a harsh rule to hold that, because a man has a right to pass along a public road, he is under no duty to avoid a known danger.  Such is not the law." The case of Erie City v. Magill, 101 Pa. 616, is another instance in which the duty of one passing along a street to avoid a known danger, was enforced in circumstances of great hardship and suffering to the person injured.  There are numerous other cases of the same character which might be cited, but it is quite unnecessary.

The present case is an extremely plain one, requiring the application of the doctrine under consideration.  The plaintiff does not at all deny, but expressly admits that he knew very well that the road was unsafe to travel, and knew thoroughly the defects that made it so.  As a matter of fact, the accident occurred by reason of those very defects.  He did not choose to avoid them, though he could have done so ; and therefore he takes of his own choice the consequences, which include a legal inability to recover against the township.

The judgment is reversed on the second, fourth, sixth, and seventh assignments of error.

Judgment reversed.