John Francis Bailey, Agnes Bailey, Mary Bailey and William Lloyd Bailey, minor children of Edward Bailey, deceased, by their next friend and guardian, James Bailey, v. Brown Township, Appellant.

*Negligence— Townships—Dangerous road—Contributory negligence— Evidence.*

In an action by minor children against a township to recover damages for the death of their father, the court should direct a verdict for defendant, where the negligence of the defendant is established by clear and satisfactory evidence, but where it also appears that the accident occurred on a dark, rainy night, at a point where the road was only eight feet wide, with a perpendicular ascent of twelve feet on one side and a perpendicular descent of six feet on the other, without any guard rail; where the uncontradicted evidence tended to show that at the time of the accident deceased was driving a horse in a buggy, leading two horses behind, with their halter straps tied together around his body, and he was jerked or dragged from the buggy over the embankment and killed by reason of having the halter straps so adjusted around his body, and that his trip over this dangerous road could have been postponed until the next day.

Argued March 17, 1898. Appeal, No. 78, Jan. T., 1898, by defendant, from judgment of C. P. Lycoming Co., June T., 1897, No. 270, on verdict for plaintiffs. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Trespass for death of plaintiff's father. Before REED, P. J., of the 54th judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

Defendant's fourth point and the answer thereto were as follows:

If the jury believe from the evidence that when Edward Bailey, the deceased, came to the Narrows he adjusted the halter straps attached to the two horses tied together around his body in such a manner that he could not readily free himself from said horses in case of said horses becoming unmanageable, or going over the embankment, and so led said horses whilst seated alone in said buggy and driving at the same time the horse hitched thereto, and was jerked or dragged from said buggy over said embankment by reason of having said halter straps so adjusted around or over his body, he was guilty of contributory negligence, and the plaintiffs cannot recover.  *Answer:* If you find that the accident occurred in the manner described in the point, then the conclusion stated would follow and your verdict should be for the defendant.

Defendant's seventh point was as follows:

Under all the evidence, the plaintiffs are not entitled to recover.

This point was reserved, and the case submitted to the jury, who returned a verdict for plaintiffs for $2,000.   Subsequently the court entered judgment for plaintiffs on the verdict.

*Errors assigned* were in not giving binding instructions for defendant and in entering judgment for plaintiffs.

*William W. Hart* and *A. G. Miller*, for appellant.—It is difficult to see how the case in hand can be distinguished from the case of Hill v. Tionesta Township, 146 Pa. 11.

Where an accident happens in consequence of conspicuous defects which were perfectly manifest, and the injuries sustained in the way that might have been expected, there can be no recovery, for the reason that, " a man is as much bound to avoid a known danger on a public highway as anywhere else : " Hill v. Tionesta Twp., 146 Pa. 11 ; Forks Twp. v. King, 84 Pa. 230 ; Crescent Twp. v. Anderson, 114 Pa. 643 ; Mueller v. Ross Twp., 152 Pa. 401 ; Winner v. Oakland Twp., 158 Pa. 405.

No one having seen the occurrence, and there being no evidence as to what caused the deceased to go over the embank-

ment, his death cannot be imputed alone to the negligence of the defendant, in the absence of such proof: Schaeffer v. Jackson Twp., 150 Pa. 145; Peaslee v. Town of Chatham, 69 Hun, 389.

The testimony of G. W. Crumm and Fred M. Crumm, as to the statements made by John Bailey, immediately after the occurrence, was part of the res gestæ: Coll v. Easton Transit Co., 180 Pa. 618.

W. E. Ritter, with him L. B. Seibert and Eugene Mullin, for appellee, cited on the question of contributory negligence: Altoona v. Lotz, 114 Pa. 238; Borough of Easton v. Neff, 102 Pa. 474; Mill Creek Twp. v. Perry, 20 W. N. C. 359; Humphreys v. Armstrong Co., 56 Pa. 204; Penna. R. Co. v. White, 88 Pa. 327; Lehigh Valley R. R. Co. v. Greiner, 113 Pa. 605.

OPINION BY MR. JUSTICE McCOLLUM, April 3, 1899:

At the point where the accident occurred the width of the road did not exceed eight feet. On the western side of it there was a perpendicular ascent of about twelve feet, and above that a high and steep hill. On the eastern side of it there was a perpendicular descent of about six feet created by the wall which supported the road, and from the base of this wall to the railroad the distance was 129 feet, with a slope of eighty degrees. There was no guard rail or barrier of any description on the eastern side. The condition of the road and the dangers attending travel upon it in the night-time or in the daytime were known to the Bailey brothers. They passed over it in the forenoon of the day of the accident. They rode in a buggy, Edward driving the horse attached to it, and John leading a horse behind it. As they neared the Narrows John left the buggy and walked behind it with his horse until they passed them, when he resumed his seat in the buggy and led his horse as before. They were then about nine miles from Morris, where they arrived at noon. While at Morris they purchased two strange horses, giving in part payment the horse they had led there. About 5 o'clock in the afternoon they left Morris, taking with them the strange horses, and proceeded homeward. In returning they rode in the buggy, John driving the horse harnessed to it, and Edward leading the strange horses behind it. They reached Blackwell's, about two miles from the Narrows, at 6:30

in the evening and stopped for a short time at the hotel there. At this point they hesitated about proceeding further that night, but finally determined to go on. Before they reached the Narrows it was dark and raining, and their effort to pass through them resulted in the death of Edward and of the horses he was leading.

This suit was brought by the guardian of Edward's children, and in their interest. It was based on the alleged negligence of the defendant which on the trial of the case in the court below was established by clear and satisfactory evidence. But the defendant alleges that Edward Bailey's negligence was the sole cause of, or at least contributed to, his untimely death. As sustaining this claim of contributory negligence on the part of the deceased the conditions already described are referred to and the cases supposed to be analogous to the case at bar are cited. Five of the cases cited, to wit: Forks Township v. King, 84 Pa. 230, Crescent Township v. Anderson, 114 Pa. 643, Hill v. Tionesta Township, 146 Pa. 11, Mueller v. Ross Township, 152 Pa. 401, and Winner v. Oakland Township, 158 Pa. 405, clearly recognize and sustain the settled rule or principle that " a person who knows a defect on a highway and voluntarily undertakes to test it when it could be avoided cannot recover against the municipal authorities for losses incurred through such defect.".

The attempt of the Bailey brothers to pass through the Narrows in the night-time was, under the circumstances, the assumption of an obviously dangerous risk, the nature and magnitude of which they fully comprehended. It was a risk which they well knew could be avoided, or at least materially minimized, by the postponement until morning of their journey homeward. When they came to the Narrows John left the buggy and, taking with him the lantern he lighted at Blackwell's, walked a few paces ahead of the horse he had driven from Morris. Edward remained in the buggy to drive the horse attached to it and lead the strange horses behind it. This was a task which neither of the brothers had previously undertaken. The performance of either branch of it called for the exercise of the utmost care and skill of the person charged with it. He could not allow the horse attached to the buggy to go at will without increasing the risk he had assumed. He

could not intelligently guide the horse and buggy with one hand and the strange horses with the other. Did he attempt to do so? The horses he led had headstalls on with halter straps attached and tied together at the ends. Did he place the halter straps around his body or arm, that he might have both hands free to guide the horse attached to the buggy? If any person knew what his preparations were for the performance of the task he had undertaken it was his brother, John Bailey, who was but three or four paces ahead of the horse and buggy when the strange horses and Edward Bailey went off the Narrows and down the slope to the railroad. He was a witness on the trial of the case, and when asked on cross-examination if he did not on the night of the occurrence tell certain persons that Edward had the halter straps around him he denied having made any such statement to anybody, and supplemented his denial as follows : " I will tell you what I did say. I said, in speaking how it happened, that he might have had the halter straps around his body or he might have had them around his arm ; I did not know how that was ; I could not tell." His denial above stated, together with his supplement to or explanation of it, constitutes his only testimony in relation to the manner in which the horses were led by Edward after the additional burden of driving the horse attached to the buggy was cast upon him. In connection with this testimony a reference to and summary of the testimony antagonistic to it is deemed pertinent and proper. D. W. Crumm and his son Fred M. Crumm were the first to reach the point in the Narrows where the accident occurred. They had with them a lantern with a light in it. John Bailey and the horse and buggy were still there. On the trial of the case, D. W. Crumm, referring to what passed between him and Bailey at the point aforesaid, testified as follows : " First he says, ' Oh my brother.' I says, ' Where is he ? ' He says, ' He has gone over the Narrows.' I asked how he knew. ' Because,' he said, ' he had a span of horses and they were tied around him, and the horses went and he most certainly went.' I said, ' Let's go there and see ; there might be such a thing we can save him ; he said, ' No, there is no use, because he was fast to the horses.' " Fred M. Crumm, who was present at this conversation fully corroborated the testimony of his father. J. E. Maston testified that he had a conversation with John

Bailey in the presence of George Crumm "with reference to the manner in which his brother was leading the horses," and that Bailey said, "he must have had the halters around him in front of him." His testimony was corroborated by that of George Crumm, who testified that Bailey in his conversation with Maston said that his brother " put the halter straps around in front of him so that he could have both hands to drive." G. W. Smith testified to a conversation he had with Bailey the day after the accident in which he said in substance that his brother had the halters around him so he could have both hands free to drive the horse and buggy. Dr. Delaney testified that Bailey told him that his brother had the halter straps tied around him. Bert Chyton heard the conversation between Bailey and Delaney and corroborated the testimony of the latter. S. W. Inroy, agent and operator for the Fall Brook Railway Company at Slate run, testified that the night of the accident he had a conversation with Bailey respecting it in which he said, inter alia, that his brother placed the halters around his body so he could drive with more freedom. The evidence thus summarized related to the manner in which the strange horses were led by Edward while he was driving the horse attached to the buggy, and the only testimony which contradicted or qualified it was that of John Bailey. It was claimed by the defendant on the trial of the case that what John Bailey said to D. W. Crumm at the point where the accident occurred was admissible as part of the res gestæ, and Coll v. Easton Transit Co., 180 Pa. 618, was cited as authority for the claim. The court held that it was not a part of the res gestæ, but that what he said at that time and afterwards upon the same subject was admissible to discredit his testimony on the trial. The court also held that if the accident occurred in the manner described in the defendant's fourth point the negligence of the deceased contributed to it and thereby prevented a recovery in this action. As all the evidence relating to the manner in which the accident occurred was in full accord with the point, and there was not a scintilla of evidence in the case to controvert it, the court, instead of submitting the case to the jury, should have directed a verdict for the defendant. The position in which the horse and buggy were found ; the sudden disappearance of the strange horses with the man charged with the

task of driving the former and leading the latter ; the testimony of eight disinterested witnesses descriptive of John Bailey's account of the occurrence, and his own testimony on the trial, unite in compelling the conclusion that the negligence of Edward Bailey contributed to his untimely death. We therefore sustain the defendant's seventh point.

Judgment reversed.