# Snyder *v.* Penn Township.

*Negligence—Township road occupied by railroad—Liability of municipal authorities.*

When a township road has been taken and occupied by a railroad company for its own purposes under legal authority, pending the relocation of the road by the railroad, the township authorities are not required to keep the road in a safe condition for travel; if the road becomes unsafe and the municipal authorities desire to repudiate its use as a public highway it becomes their duty to erect such barriers as will give notice of that fact. If the road were left open in a dangerous condition and a stranger or traveler, ignorant of the danger, because of that neglect, is led into a trap and suffers an injury, the township will be liable.

*Dangerous road in process of reconstruction—Duties of traveler and township.*

Notwithstanding the duty of municipal authorities to barricade a road rendered unsafe for travel pending relocation by a railroad in order that persons may be prevented from unwittingly passing into a dangerous position, it is the duty of travelers who know the condition of the road to take all reasonable precautions to avoid injury.

*Township road—Contributory negligence of traveler.*

A person, raised on a farm and used to horses who saw and who must be presumed to have understood a peril necessarily to be encountered in driving with a timid horse on a narrow and obstructed road adjoining a railroad, who knew the road was in process of reconstruction and that as a consequence it was in a condition that required the exercise of greater care upon the part of those who attempted to pass over it, who seeing and understanding her peril voluntarily encountered a known danger is guilty of contributory negligence and may not charge the consequence of her rashness upon the township.

Argued March 14, 1900. Appeal, No. 32, March T., 1900, by defendant, in suit of Sarah J. Snyder against the township of Penn, from judgment of C. P. Perry Co., Aug. T., 1897, No. 24, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by W. D. PORTER, J., BEAVER and W. W. PORTER, JJ., dissent.

Trespass for personal injuries received through the alleged negligence of defendant. Before LYONS, P. J.

The facts sufficiently appear in the opinion of the court.

Defendant submitted among others the following point:

[11. It appears from the evidence that the plaintiff at the time of the accident was riding on a wagon, seated on the high spring seat at the right side of the driver, by whose consent she was a free passenger, behind a pair of horses whose habits were unknown to her; that in the borough of Duncannon, a quarter or a half mile from the scene of the accident, one of the two horses drawing the wagon frightened at a passing train of cars on the Pennsylvania railroad, the track of which the wagon was then passing, at a distance therefrom of about thirty or forty feet; that plaintiff knew that the road over which they were about to pass, at the point where the accident subsequently occurred, was close beside the Pennsylvania railroad track, and was very narrow, with a steep hill on the side away from the railroad track; and that for some time previous the Pennsylvania Railroad Company had been building a wagon road above the road upon which the accident happened, and that the old road was apt to be dangerous by reason of stones and other material falling and lying on the old road; that fifty feet or more from the point of the accident, upon the top of Boston hill, plaintiff was in full view of and actually saw the approaching train which frightened the horses, and the stones lying in the road before her, and also saw stones falling or rolling down the hillside; that she made no effort to get out, but remained in the wagon until the accident occurred. The plaintiff was guilty of contributory negligence, and cannot recover. *Answer:* Refused.] [8]

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Error assigned* among others was (8) refusal of defendant's eleventh point, reciting point and answer.

*James M. Barnett*, with him *James W. Shull*, for appellant.—The uncontradicted evidence in the case showed that the plaintiff was guilty of contributory negligence in attempting to pass over the road at the point of the accident under the circumstances.

This was made the subject of defendant's eleventh point (eighth assignment of error), which was refused. The plain-

tiff was not a passenger for hire with a common carrier, but was riding in a neighbor's wagon as a matter of accommodation to herself. At the top of Boston hill she saw clearly before her the dangers of the road; she had an opportunity to get out, if she had seen fit to do so, for the wagon was stopped at the top of the hill; she assumed the risk of the attempt to pass between moving freight trains on the one side and falling stones and rocks on the other, over a road obstructed by rocks and stones, seated as she was on a high spring seat above the wagon box, behind horses whose habits were unknown to her. This was contributory negligence per se and the point should have been affirmed: Crescent Township v. Anderson, 114 Pa. 643; Dean v. Penna. R. Co., 129 Pa. 514; Hill v. Tionesta, 146 Pa. 11; Linn v. Ralpho Township, 186 Pa. 420; Keeley v. Shanley, 140 Pa. 213; Lynch v. Erie, 151 Pa. 381; Brendlinger v. New Hanover Township, 148 Pa. 93; Barnes v. Sowden, 119 Pa. 53; Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306; Camden & Atlantic R. R. Co. v. Hoosey, 99 Pa. 492; Bailey v. Brown Township, 190 Pa. 530.

*W. N. Seibert* and *Chas. H. Smiley*, for appellee.—The facts in this case are similar to those in Aston Twp. v. McClure, 102 Pa. 322.

The road was an old and much used highway. The plaintiff occupied a seat on the front of a wagon with a sober, steady man who was driving his own team at the time of the accident and was giving it special attention. There were no barriers erected over the highway, nor anything to warn them of danger ahead. Keiser, the foreman of the contractor, testified that a notice reading, "Caution; be careful; danger, T. Benton Brown, Contractor," was put up on Boston hill, but it is a significant fact, that he alone of all the witnesses for both plaintiff and defendant saw the notice. That he was in error, however, is established by the testimony of Harry McCoy, who had charge of the contractor's stores, and who testifies that the notices of which that was one were unpacked by him and that it was not put up until after the accident occurred, and further, that Keiser was again in error as to the words of the notice. It was shown that the wagon, on which plaintiff was a passenger, was one of eight teams that followed each other in succes-

sion that day with the "flitting." Some of the wagons preceded
theirs and were still in view after having successfully passed
the place of the accident.    Under the circumstances the plain ·
duty of the court was to submit the question of contributory
negligence to the jury and by their verdict the question was
found in favor of the plaintiff : Hogan v. West Mahoney Town-
ship, 174 Pa. 352.

OPINION BY W. D. PORTER, J., July 26, 1900:

The plaintiff seeks to recover damages for injuries suffered
in being thrown from a wagon, alleged to have been caused by
the neglect of the township authorities to keep in proper condi-
tion a public road.    The road in question led from Duncannon
to Marysville, passing the point where the Susquehanna river
curves around the end of Cove.mountain, where the entire space
between the river and the precipitous mountain side was
occupied by the tracks of the main line of the Pennsylvania
railroad and the township road in question.    The evidence
clearly indicates that the road always had been narrow.    On
March 17, 1896, the Pennsylvania Railroad Company, having
made preliminary surveys for the reconstruction of its tracks,
undertook the actual work, upon the ground, of reconstructing
and changing the location of this road for the distance of about
a mile and a quarter.    The company, through its contractors
and employees, began and carried through to completion the
construction of the road upon its new location, upon a route
beginning at the top of what is known as Boston hill, and ex-
tending along the side of the mountain at varying distances
above the location of the old road, to a point near Cove forge,
where it again joined the old road.    The road as thus relocated
and constructed by the company consisted in part of a cut into
the side of the mountain and in part of a fill or embankment
which extended out into and rested upon the bed of the old road
during the greater part of its length, the amount of the filling
in upon the old road varying at different points.    In the process
of construction, the earth and stones taken from the mountain
side were thrown over the embankment and found their lodg-
ment in the space between the two roads or upon the bed of
the old road.    At frequent intervals the employees of the rail-
road company collected the stones and material which had rolled

into the bed of the old road, and from them constructed a rough wall along the foot of the embankment supporting the new road. This wall rested in, and the embankment occupied a part of the old road. The work was prosecuted continuously and the new road was completed in September, 1896. The railroad company subsequently relocated its tracks, and at one point of the line occupied the entire bed of the old road for that purpose. The facts above recited are undisputed, but it is contended on behalf of the plaintiff that they are not sufficient evidence of an appropriation of the old road by the railroad company, for the reason that no evidence was offered tending to show that the survey of the line of the railroad, as relocated, had been returned to the company and formally adopted by the board of directors, and in support of this position Johnston v. Callery, 184 Pa. 146 is cited. In that case, and those which are kindred to it, the question involved was whether the survey of a line for the railroad and adoption thereof by the railroad company, without notice to the owner and without entry upon the land, imposed any easement or incumbrance upon the property, and it was held that an incumbrance was thereby imposed. Those cases simply decide that in order to create an incumbrance it is not necessary that there should be either a payment of damages or an actual taking possession of the land. In the present case it was not disputed that the Pennsylvania Railroad Company actually took possession of the land upon which the new road was located, and that in the construction of that road it filled in and occupied a portion of the old road, and upon the completion of work upon the road as relocated it occupied the bed of the old road with its tracks. This, in the absence of evidence to the contrary, was conclusive of the fact that the work was done with the approval and by the authority of the company. The authority of the company to take possession of the old road is to be found in the 5th section of the Act of March 27, 1848, P. L. 273, which provides: " That if said railroad company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith, at their own proper cost and expense, on the most favorable location and in as perfect a manner as the original road." When, by virtue of this power, a public road is taken possession of by the company, the manner in which

the duty of reconstruction may be enforced is provided in the Act of March 20, 1849, P. L. 196. Under this legislation it has been decided that the rights enjoyed by the company for "settling and obtaining the right of way" do not include the mode of settling differences between township authorities and the company which has taken possession of a public road. Such settlement and acquisition relate to private property, which, under the constitution, cannot be taken by a corporation without compensation. The company so taking possession of a public road is not required to give bond, nor is it required to make a new road before occupying the old one. The question of the necessity for a change is left by the statute to be determined, in the first instance, by the railroad company. "Unless the power thus committed to the company is abused, or used without due regard to the public interests, it is conclusive of the question. If it is abused, such misuse of it may be restrained or redressed through the courts:" Railroad Company v. Commonwealth, 73 Pa. 29; Penna. R. Co.'s Appeal, 128 Pa. 509. Whether the Pennsylvania Railroad Company had made satisfactory arrangements with the private owners over whose lands the new route was laid out, was a matter with which the supervisors had nothing to do. As against the township authorities the railroad company had a right to take possession of the old road for the purpose of relocating its tracks. If, in the exercise of its discretion, it elected first to construct a new public road, filling in with the embankment thereof a part of the old road, that was as much a taking possession of the old road by the railroad company as if it had actually occupied it with its tracks. The company saw fit to first construct the new public road, and afterwards lay its tracks in the bed of the old road. With this order of procedure the supervisors had nothing to do. The railroad company had the right to occupy the whole of the old road during the period required to make the changes. The duty of the supervisors to keep this road open for travel had, therefore, ceased. The evidence discloses, however, that the supervisors did make an effort to keep this road open for public travel, although its width was diminished by the fill. If the road had become unsafe and the municipal authorities had desired to repudiate its use as a public highway, it was their duty to erect such barriers as would give notice of that fact. If it were left

open in a dangerous condition, and a stranger or traveler, ignorant of the danger, had, because of that neglect, been led into a trap and suffered an injury, the township would be liable: Burrell Township v. Uncapher, 117 Pa. 353; Township of Aston v. McClure, 102 Pa. 322.

The road was in this condition on March 31, 1896, when the plaintiff attempted to pass over it and was injured. She was riding in a wagon, to which were attached two horses driven by John Seiders, who owned the vehicle and horses. Seiders was not a common carrier, and both he and the plaintiff were members of a party who were voluntarily assisting a neighbor to move from one habitation to another. Plaintiff was riding in the wagon merely by the invitation of Seiders, or in pursuance of an arrangement made for the convenience of those who made up the party. She was carried without compensation, merely as an act of courtesy upon the part of Seiders, who had full control of the team and the wagon. At Duncannon station, a quarter of a mile before reaching that portion of the road, the location of which was being changed, the lead horse in the team, behind which the plaintiff was riding, frightened at a passing train, but no injury resulted. The plaintiff testified that she knew that the railroad company had been working at the change of the location of that road for two weeks; that she could hear them blasting while she was in her own house, and her knowledge of the exact condition of affairs before she started on this journey is made clearly apparent by this testimony: " Q. Did you know what they were doing, or talk to any one with reference to what they were doing? A. No, sir, not more than persons come backwards and forward there and we asked them what they were doing, and they said they were blasting rocks. Q. Did they say anything about stones in the road? A. Yes, sir, they said there were lots of stones in the road down there and it was hard to get through with the team because there was so much stones and stuff there. Q. Were you acquainted with the old road? A. I had went that road pretty often. Q. You knew it was close to the railroad? A. Yes." The plaintiff being acquainted with these facts, knowing that one of the horses of the team had scared at a train at Duncannon, and that at that time she, as a precaution, had asked a neighbor to stand at the head of the horse,

continued upon her journey. Having arrived at the top of Boston hill, the point where the relocation of the road began, the team was stopped and from that point the place where the accident occurred was plainly visible, only from fifty to one hundred and fifty feet distant. The plaintiff could see, and did see, the employees of the railroad company at work in the construction of the new road, the narrow condition of the old road at the point where the accident occurred, the stones lying at the side of the road and stones coming down the hillside at that point, which was just below where the men were engaged in the work of reconstruction, and she saw that there was a train passing the point at the time. All these things are admitted by both the plaintiff and the driver to have been clearly within their view; they both testified that they saw stones rolling down the hill from the new road into the bed of the old one when they were at the top of Boston hill. Upon cross-examination the plaintiff testified: " Q. When you looked down from the top of Boston hill and saw those trains passing each other, and saw those stones in the road that you were to pass over, and saw the stones coming down from the hillside, did it occur to you that it might be dangerous to drive through there? A. No, sir, I did not give it a thought at the time. Q. Did it occur to you how strange horses would behave themselves under such circumstances? A. No, sir. Q. You did not think about that either? A. No, sir." The wagon in which the parties were riding was an ordinary two-horse wagon, with a box bed, and the seat was raised up by springs, upon which it rested. Having stopped at the top of Boston hill and had this clear view of the conditions which they were about to encounter, the parties waited until the locomotive of the westbound train had passed. Without either saying anything to the other they started and drove down the hill, alongside a freight train which was moving eastward, and attempted to drive through a space between the railroad track and the stones which had come down from the workings upon the new road. The plaintiff testified that it would have kept them busy to have gotten by even if the horse had not frightened. The evidence of one witness, called by the plaintiff, was that he measured the space between the ballast of the railroad and the large stones which had come down from the workings upon the new

road, and that the distance was nine or ten feet. All the witnesses agree that the passageway was very narrow. In this condition of affairs, with their eyes open, in broad daylight, they attempted to pass between a moving train and the obstructions upon the opposite side of the road, evidently relying upon a pair of horses, one of which had already frightened at a train that morning. The result of this rashness was what reasonable prudence ought to have foreseen was likely to follow. The horse nearest the train, being the same which had already frightened at a train at Duncannon, became frightened, jumped towards the hillside and the embankment of the new road, got partly over the tongue, was extricated from that position, and, continuing to crowd the other horse towards the hillside, the wagon was carried against a large stone which had been thrown down from the new road and was lying near the foot of the embankment; the plaintiff was thrown out, striking first upon the horse nearest the embankment, and then upon a stump which was lying upon the debris which had come down from the road above. From this position she fell to the ground. The frightened horse, continuing in his course, forced the wagon into contact with this stump, when the wagon was overturned.

The only negligence which could have been charged against the supervisors, under the evidence in this case, was that they had failed to barricade this road and shut off public travel, for they had no power to prevent the filling in of the road by the Pennsylvania Railroad Company. The duty to barricade was that persons might be prevented from unwittingly passing into a dangerous position. The duty of travelers who knew the condition of the road was to take all reasonable precautions to avoid injury. The negligence of Seiders in driving into this position of imminent peril cannot be imputed to this plaintiff, but if she herself, with full knowledge of the conditions by which she was surrounded, joined with him in testing the danger, she is responsible for her own act. She testified that she had been raised on a farm and had been used to horses. The condition of the road, with the obstructions thereon, and the moving train, were in her plain view while the team was standing at the top of Boston hill. She testified that she could have gotten out at that point if she had so desired; that she had said nothing to Seiders about the danger, and that he was equally

silent upon the subject. She must be held, therefore, to have joined with her associate in testing the danger and taking the chances of getting through. Reasonable prudence would have dictated that she should have descended from the wagon and walked past the place of manifest danger. It is the duty of one who knows of and sees the dangerous condition of a road to do all in his power to avoid and minimize the danger: Township of Crescent v. Anderson, 114 Pa. 643; Dean v. Penna. R. Co., 129 Pa. 514; Hill v. Tionesta Township, 146 Pa. 11; Brendlinger v. New Haven Township, 148 Pa. 93; Bailey v. Brown Township, 190 Pa. 530. This plaintiff had knowledge of every fact of which the erection of the barrier by the supervisors would have advised her, and therefore she was not misled by their neglect of duty. She knew that the road was in a process of reconstruction; that, as a consequence, it was in a condition which required the exercise of greater care upon the part of those who attempted to pass over it. The fact that the road was in a process of reconstruction, in a measure changed the rule as to the condition in which highways are required to be kept, for, under such circumstances, inequalities in the road are to be expected. But this plaintiff is not affected by constructive notice alone. She saw, and is presumed to have understood, the peril which she was about to encounter; she elected to remain on the wagon rather than walk for a hundred yards and avoid all danger. Having voluntarily encountered this known danger, it is not just to charge the consequences of her rashness upon the township. Her own evidence clearly establishes her contributory negligence: Keeley v. Shanley, 140 Pa. 213. The eighth assignment of error is sustained.

Judgment reversed.

BEAVER and WILLIAM W. PORTER, JJ., dissent.