### WERTHNER et al. v. GIRARD AVE. FARMERS' MARKET CO.

(Circuit Court of Appeals, Third Circuit. December 4, 1914.)

No. 1848.

1. MUNICIPAL CORPORATIONS (§ 807*)—DEFECTIVE STREETS—INJURIES TO PEDESTRIANS—CONTRIBUTORY NEGLIGENCE.

Where plaintiff, in the daytime, with full knowledge of the defective and rounded character of a curbing of a street, chose to walk on it to avoid mud and water that had gathered over certain sunken bricks in the pavement, and in doing so fell and was injured, when it was possible for her to have taken a few steps to either side of the depression and pass in safety, she was guilty of contributory negligence, precluding a recovery against the owner of the adjoining property.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1679–1681; Dec. Dig. § 807.*]

2. COURTS (§ 367*)—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

While the streets and sidewalks differ somewhat from real estate, as to which the federal courts are bound to follow the state rule, there is nevertheless a propriety in the federal courts enforcing the settled decisions of the state courts as to such streets and sidewalks.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by Christiana Werthner and another against the Girard Avenue Farmers' Market Company. Judgment for plaintiffs, and defendant brings error. Reversed.

Francis C. Menamin, of Philadelphia, Pa., for plaintiff in error.

J. S. Levin, of Philadelphia, Pa., for defendants in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below George Werthner and Christiana, his wife, subjects of the German emperor, brought suit and recovered a verdict against the Girard Avenue Farmers' Market Company, a corporate citizen of Pennsylvania, for damages suffered by Mrs. Werthner, through the alleged negligence of the Market Company in failing to keep the pavement abutting its market house in proper repair. On entry of judgment on such verdict, defendant sued out this writ, and assigned for error the denial of defendant's point that "under all the evidence your verdict must be for the defendant." We have carefully examined the proofs and pleadings, and have reached the conclusion that in denying such point the trial court erred.

The defendant maintains a market house on the northwest corner of Hutchinson street and Girard avenue, public streets in the city of Philadelphia. At the northernmost end of the market is a driveway opening from Hutchinson street. The pavement on Hutchinson street extends over the head or entrance of this driveway. The passing of teams around the corner has in time rounded the curb outwardly, and the brick pavement, for say two feet back from the curb, slopes down toward the curb, so that for a distance of two feet along such curb it was higher than the pavement. In that regard Mrs. Werthner testified:

"The pavement is sunken in about an inch and a half or two inches, and about two or two and a half feet wide. Q. When you say it is sunken, do you mean it is sunk down even, or in what condition? A. No, sir; it is steep. It is pretty near something like two inches deeper than the curb. * * * Near the curb it is deep, then it comes out kind of slight like. * * * The curb sticks out on the inside toward the pavement, and the outside of the curb is round and slippery and slanty, kind of worn off. The top of the curb is slippery, but at the inside it is kind of coming up pointed and kind of steep."

With respect to the accident itself Mrs. Werthner testified:

"Q. Tell us just what happened. You said you were coming along Hutchinson street. Which way were you walking? A. I came from Girard avenue up Hutchinson street near home. As I came on that crossing, I wanted to step across over that sunken paving, and I stepped with my right foot up on the curb, pretty carefully, of course; I was not going fast. When I stepped there, my foot, from about the middle of the sole, slipped off like that (illustrating), and my heel caught on the inside of the curb, on the pointed part; then I fell down. Q. In what manner did you fall? A. Frontwards. Q. Did you fall quickly, or slowly, or how? A. No; I think I fell pretty quick. I fell pretty heavy. I was all bruised on my elbows and my knees. * * *

A. I came from Girard avenue up Hutchinson street, and right in here is that sunken part that the pavement is sunken in, and this curb, that stands up on the inside of the pavement about an inch and a half or so, and on the outside of the curb it is slippery and slanty and worn off, and this is where I put my right foot. While I put the foot there it slid off the outside like that (illustrating), and my heel caught in the inside of the curb, and then I fell. My toes must have got caught in here, in this street (illustrating), in these cobbles. Then I could not get my foot out afterwards. The foot was twisted around. The heel was front. The toes were back. Then right after, a few minutes after that, if I remember, it was as big as two fists right on that ankle."

## On cross-examination she testified:

"Q. In order to get from your house to Girard avenue, along Hutchinson street, you would be crossing directly over the spot where this accident occurred? A. Yes; I have passed there. I thought I could pass it safely. It never looked to me dangerous. * * * Q. You think the condition was there for a year before? A. I think so. * * * Q. When you passed over it, going up and down the street, you did not notice anything wrong with it before that, did you? A. I had seen the pavement is sunken in, but I thought I could pass it safely, as I had done it before, and I would not have fallen if the curb would not have been so slippery and slanty and worn off. Naturally I had to step over the curb. I did not want to step in the broken paving. A lot of water stays there, and mud. * * * A. When I came there, I wanted to pass; and I noticed the bricks are sunken in, and uneven ilke, and naturally I had to step onto the curb. I could not step out on the pavement. I would have to go out on Hutchinson street, and I would run the risk of getting run over with the child, and then I slipped. Q. What caused you to fall was the slipping of your foot from the curbstone, was it not? A. Yes. * * * Q. You have said you stepped over this hole in the pavement, and so as not to trip over it, you put your foot upon the curb at the time when you fell. A. I did not want to step in the broken pavement. I had to step on the top of the curb, and when I was stepping on the top of the curb, then my foot slipped, and while I slipped my heel caught on the sharp edge of the curb. On the outside it is very round, slanty, and worn off from teams, and I suppose other uses."

[1,2] It will thus appear that the bricks and curb had been in the same condition for a considerable time. Mrs. Werthner was familiar with the place and had passed over it before. On the day of the accident she came to it in daylight. Her attention was called to it, and with full knowledge she chose to avoid the mud and water that had gathered over the sunken bricks, by stepping on the curb, which she knew and saw was rounded. It was possible for her to have taken a few steps to either side of the depression and passed in safety. If the condition of the pavement charged the owner with negligence, it certainly warned Mrs. Werthner to avoid all danger by passing by, instead of over, the depression. With full knowledge, she chose to step over the water and onto the curb. If it was negligence for the owner to maintain such a pavement, it was equally negligent for the passer-by to deliberately, knowingly, and needlessly subject herself to such danger. The undisputed facts being that Mrs. Werthner, with full knowledge of the condition of the street, voluntarily chose to test the alleged defect, we are constrained to hold she cannot recover. This conclusion is in accord with the uniform, settled, and continuous holdings of the Supreme Court of Pennsylvania on that subject. Passing over the numerous intervening cases, we limit ourselves to noting Forks

Township v. King, 84 Pa. 230, decided in 1877, Robb v. Connellsville Boro., 137 Pa. 45, 20 Atl. 564, in 1890, and Lerner v. City of Philadelphia, 221 Pa. 294, 70 Atl. 755, 21 L. R. A. (N. S.) 614, in 1908.

The judgment below is therefore reversed.