## Haven v. Pittsburgh & Allegheny Bridge Co., Appellant.

[Marked to be reported.]

*Negligence—Contributory negligence—Choice of ways.*

Where a person, having a choice of two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover.

Defendant, a bridge company, in taking down an old bridge for the purpose of erecting a new one in its place, suspended travel on the footways while the work was going on, but maintained the roadway unobstructed for travel. Plaintiff and her daughter desiring to cross the bridge found that there was no footway, and were obliged to take the roadway in order to cross. They were told by the toll keeper they would have to walk part of the way on the roadway, but they were not told to take the footway for any part of the crossing. They saw that the footway was destroyed for about half the way across, the planks being torn up and the timbers underneath exposed. At about two thirds of the way across the bridge an opportunity was afforded to go upon the remainder of the footway and they went upon it, and walked the rest of the distance upon it. The roadway for the rest of the distance was unobstructed, and they could have walked upon that across the bridge if they had chosen to do so, but they chose to go upon the footway. On the latter, men who were at work upon the bridge had cut a square hole through the floor over the pier large enough to pass through, in order to prosecute their work. A piece of the planking was lying upon the surface of the walk turned bottom side up with a nail or spike projecting through about two inches, but bent over so that it was no more than an inch above the surface. The end of the bent nail was not perpendicular, but horizontal, and owing to the plaintiff's having a hole in the sole of her shoe, the end of the nail caught in the shoe, and she was thus thrown forward, and fell to the floor and was injured. *Held*, that the plaintiff was not entitled to recover.

If the plaintiff had paid but slight heed to her steps she would have discovered the loose plank and avoided it, or if she had simply continued on the perfectly safe course she was pursuing on the roadway, she would not have been hurt. Per GREEN, J.

Argued Oct. 26, 1892. Appeal, No. 27, Oct. T., 1892, by defendant, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1890, No. 775, on verdict for plaintiff, Martha W. Brown Haven. Before Paxson, C. J., Sterrett, Green, Williams, McCollum, Mitchell and Heydrick, JJ.

Trespass for personal injuries.

On the trial, the evidence tended to establish the following facts: Defendant company on May 28, 1890, was engaged in taking down their old bridge and replacing it with a new one. The work was being done in such a way as to allow travel to continue. The footway at the Pittsburgh end was torn up for some two thirds of the way across, but the roadway with two tracks for street cars was open to travel. There were signs "danger" or "dangerous, pass on," at each end of the bridge and at the ends of each span where the men were working. Plaintiff and her daughter in midday on May 28, 1890, were passing over the bridge from Pittsburgh to Allegheny City. They walked on the roadway until about two thirds of the way over, when they passed through a large opening to the footway, following other travelers. Plaintiff caught her foot on a nail projecting from a board, which had been taken up from the footway, and fell, sustaining injuries. The footway from this point to the Allegheny end of the bridge was in such condition that travelers could pass over on it. Further facts and evidence are stated in the opinion of the Supreme Court.

The court charged in part as follows:

"It is for you to say, gentlemen, whether the passageway as described by the plaintiff and her daughter is safe and proper. In other words, was a projecting nail or spike, such as would likely catch the shoe or clothing of some person walking along there, a proper thing to be and be allowed to remain in this footway? I am, of course, assuming, in these suggestions, that you will believe the testimony of the witnesses as to the condition of the footway; but that is entirely for you. Was that a dangerous thing to put in such a place? Was it such as persons passing along might be caught on in some way or other and injured, either by being thrown down and thus injured by the fall, or directly injured by having the foot turned and hurt? If it was, it was such a thing as should not have been placed on

the footway, and such as would render the defendant company liable in this action, unless the evidence satisfies you that the plaintiff herself was guilty of want of due and ordinary care; in other words, guilty of contributory negligence, which would take away her right to recover.

[" Contributory negligence is a kind of negligence on the part of a person injured which tends directly to bring about the injury, and without which the injury would not have happened.] [3]   It simply means carelessness of conduct on the part of the plaintiff at the time the injury occurred.

" It is alleged, or suggested at least, on the part of the defendant, that there was a wide roadway where carriages and cars passed along, and that if the plaintiff had walked on that she would not have been injured.   But that is not the question; not, ' Could she have avoided injury ? ' but, ' Was she doing that which an ordinary, reasonably prudent and careful man, woman or child would have done under the same circumstances ? '

" You will recollect, as to that, that part of the sidewalk was cut down, and, for a certain distance, foot passengers had necessarily to take the part of the bridge ordinarily kept for horses and vehicles.   It is not a very pleasant place to walk ordinarily ; yet it may be, and probably was, reasonably safe, if persons would take care.   After they got to the end of where the sidewalk seemed to be cut down, there seems, according to the testimony, to have been an opening between the main portion of the bridge — the highway, we will call it,—and the sidewalk.   The witness says that she saw other persons turning in from the highway and that when she came there, she turned in.   It was not the turning in which brought about the accident; that occurred after she turned in.   [Ordinarily it would be safer upon the sidewalk of the bridge than upon the highway where vehicles were passing and repassing, and unless the jury can find from the testimony that this woman was acting with unreasonable carelessness, without due regard to her own safety, she has a right to recover ; if you believe, as I have suggested, that this nail or projection was unsafe and would tend to bring about an accident of some kind to a person walking there.] [4]

[ "If you should think, then, that the plaintiff herself was free

from contributory negligence; that this was such a thing as ought not to have been allowed to remain there, supposing the defendant had known or ought to have known it was there; that it ought not to have been there because of its being dangerous to men, women or children who were passing there, then the plaintiff would be entitled to recover.] [6]

" If you should think that the plaintiff was guilty of want of care herself, she cannot recover, although the defendant might have been guilty of negligence.

[ " If you should think she was not guilty of negligence, and that it was negligence on the part of the defendant to keep this thing there, then, as I have said, the plaintiff has a right to a verdict for some amount, and the amount is for you to determine."] [5]

Defendant's points refused were as follows:

" 1. There is no sufficient proof that the injuries complained of in this case were caused by the negligence of the defendant, and the verdict must be for the defendant." [1]

" 2. Under all the evidence in this case, the verdict should be for defendant." [2]

Verdict and judgment for plaintiff for $ 2,500.    Defendant appealed.

*Errors assigned* were (1–6) instructions, quoting them as above.

*Wm. A. Stone, W. P. Potter* with him, for appellant.—There was no negligence on part of defendant.    There was nothing to show that defendant or any of its employees placed the board with the projecting nail at the place where the plaintiff was injured.    The nail might have been placed there by an outsider.    It may have been pulled out of some other part of the walk, and put there by some one else.

If plaintiff had worn a proper shoe she would not have been injured.    The negligence of defendant in suffering the nail to be there, if negligence at all, is very slight, and certainly no greater than the negligence of plaintiff in undertaking to walk across the bridge with a hole in her shoe.

Plaintiff was guilty of contributory negligence in leaving the roadway of the bridge and climbing through to the old sidewalk.    Had she remained in the roadway she would not have

been injured : Monongahela City v. Fischer, 111 Pa. 9 ; Bloomburg Steam Co. v. Gardner, 126 Pa. 80 ; Long v. Milford Twp., 137 Pa. 122.

Plaintiff was bound to anticipate that there might be nails, spikes, loose timbers and irons in the way. The law holds her to the duty of avoiding a known danger. Had she looked where she stepped she could have avoided the nail : Pittsburgh etc. Ry. v. Taylor, 104 Pa. 306.

*Arch. H. Rowand, Jr., Thomas M. Marshall* with him, for appellee.—It was the duty of defendant to maintain the footway in a safe condition : Monongahela City v. Fischer, 111 Pa. 9.

The definition of contributory negligence given by the court below was correct : Lancaster Improvement Co. v. Rhoads, 116 Pa. 377.

Defendants having undertaken to remodel the bridge and keep it open for travelers, it was their plain duty to guard that part which they retained for public use, and to warn travelers of any danger that threatened by reason of obstruction of the bridge, and by suitable devices direct them in the proper route, and with this duty attached to them as trustees to the public, they could not divest themselves by shifting the responsibility upon others.

OPINION BY MR. JUSTICE GREEN, November 11, 1892.

By the undisputed testimony in this case, the bridge company defendant, was engaged at the time of the accident, in the work of taking down the old bridge, and erecting a new and more commodious bridge in its place. As it was very desirable to preserve the travel of the bridge during the progress of the change, the work of construction was so conducted as to continue the travel on the roadway of the bridge. This could not be done on the footways, as they had to be taken up entirely, and, consequently, the travel on the footways was suspended while the work was going on. There was a clear and unobstructed means of travel all the way across the bridge at the time of the accident, not only for vehicles but also for all foot passengers. Any person crossing the bridge on the roadway could do so in perfect safety whether in a conveyance or on foot. When the accident occurred the footway had been taken up about one half the distance across the bridge, and, of course,

travel on the footway for that distance was impossible. The work of demolition of the footway was going on, however, all the time, and the occasion of the accident was, that some workmen had cut a square opening through the footwalk to get down to the pier below the bridge in order to prosecute their work. According to the testimony of the plaintiff and her daughter, a piece of the planking thus removed to make the opening, lay upon the footwalk with the lower side turned up, and through this piece of plank a nail or spike projected, and was bent over, so as to be about an inch above the surface of the plank. The plaintiff having a small hole in the sole of her shoe, it happened that the bent-over end of the nail or spike, entered this hole and she was thrown to the floor and injured. The plaintiff and her daughter had been told by one of the toll-keepers when they entered upon the bridge, that they would have to take the roadway. The daughter having testified to a conversation between her mother and the toll-keeper on this subject, was asked: " Q. What was her remark? A. Why she turned to me and said how are we going to get across the bridge; and this man answered. Q. What made her do that? Was the bridge obstructed? A. There was no footwalk at this end of the bridge. Q. He told you to take the roadway then? A. He told me to take the roadway. Q. How far did he tell you to take the roadway? A. He didn't tell us how far. We took the roadway until we came to the footwalk. Q. In answer to his question, didn't you say the toll-keeper told you to go part of the way on the roadway? A. That is what he said."

" By the Court: Q. Did he use the expression you have given now, take the footwalk? A. No, sir. He said, ' you will have to go part of the way on the roadway.' Q. That is all he said? A. Yes, sir."

On her cross-examination she was asked: " Q. But the rest of the roadway was just as clear as the part you had come over, was it? A. I'm sure I don't know. Q. Well, did you see any obstruction of any kind? A. I didn't see any obstruction; the cars went just the same, but they told us at this end that we would have to go part of the way in the roadway because mamma asked them. Q. What did they tell you? A. That we would have to go part of the way in the roadway. Q. You could have gone all the way if you had wanted to, couldn't

you? A. I suppose we could but we had been in the habit of going on the footwalk; we don't consider ourselves teams. Q. Well, you could have walked in the roadway the rest of the way if you had wanted to? A. I suppose we could."

She had previously said they entered upon the footwalk about two thirds of the distance across the bridge. On her direct examination she was asked: " Q. Before dinner you spoke of going on the roadway; what made you go on the roadway? A. Because we couldn't go anywhere else. Q. How about the footwalk? A. Well, people didn't use the footwalk; it seemed as if they had things piled up there and were using it; in fact the footwalk was all cut away and they had timbers where the footwalk had formerly been. Q. Then when you got over two thirds of the distance you went on the footwalk? A. Yes, sir."

She also described the hole through the footwalk thus: " Q. You spoke about there being a hole to get down to the pier, was this plank part of the covering of that hole? A. Yes, sir. Q. Then it wasn't part of the bridge floor? A. I think it was part of the bridge floor evidently, for the boards were the same size. When they wished to fix the hole they evidently had cut it, for the boards fit exactly. The boards of the bridge run lengthwise."

The witness also said: " I looked to see where she fell and where the spike was, and the spike was over the pier; I think it was at the beginning of the third span; I have looked since; and there were boards cut about so square [indicating] where they had evidently been working on the pier; there was plaster or cement all around and the workmen had probably come up to their dinners and had turned the board over. That was my version of it."

As all the foregoing was the plaintiff's testimony, and was not contradicted, the facts narrated may be taken as undisputed. The case of the plaintiff then stands thus, as it was presented to the court and jury. When the plaintiff and her daughter came to the bridge they found there was no footwalk and they were obliged to take the roadway in order to cross. They were told by the toll-keeper they would have to walk part of the way on the roadway, but they were not told to take the footway for any part of the crossing. They saw that the footway was destroyed for about half the way across, the planks

being torn up and the timbers underneath exposed.   At about
two thirds of the way across the bridge, an opportunity was
afforded to go upon the remainder of the footway, and they
went upon it, and walked the rest of the distance upon it.
The roadway for the rest of the distance was unobstructed,
and they could have walked upon that across the bridge, if they
had chosen to do so, but they chose to go upon the footway.
On the latter, men who were at work on the bridge, had cut a
square hole through the floor over the pier large enough to
pass through, in order to prosecute their work.   A piece of
the planking was lying upon the surface of the walk turned
bottom side up with a nail or spike projecting through about
two inches, but bent over so that it was not more than an inch
above the surface.   The end of the bent nail was not perpen-
dicular, but horizontal, and owing to the plaintiff's having a
hole in the sole of her shoe, the end of the nail caught in the
hole, and she was thus thrown forward, and fell to the floor
and was injured.   The serious question in the case is, whether,
conceding all these facts, the defendant can be legally held
liable for the plaintiff's injury.   It must be borne in mind that
the defendant had a perfect legal right to alter its bridge, and
in doing so, to destroy its footway for the purpose of replacing
it with one more commodious.   The destruction of the foot-
way was carried on in the most conspicuous manner, and the
plaintiff had absolute knowledge of the character of the work,
and the actual condition of the footwalk.   The defendant was
not engaged in the maintaining of the footway, but in its de-
struction.   It was not all destroyed as yet, but the work was
going on.   Of course, such work could not proceed without
the displacement of the planks composing the footway.   It
would have to be expected that planks would be removed, and
that pieces taken out would be lying about because the charac-
ter of the work was the removing of the planks and not the
maintaining of them.   The work of destruction of the footway
was proceeding right before the eyes of the plaintiff, and it
was distinct notice to her that the footway was not in use for
foot passengers, as it had been theretofore.   The result of her
attempt to use the footway, proves that the passage over it was
attended with danger.

The case is thus brought directly within the familiar line of
decisions which hold that where a person, having a choice of

two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover.

Thus in Forks Township v. King, 84 Pa. 230, we said, WOODWARD, J.: " A person who knows a defect on a highway and voluntarily undertakes to test it when it could be avoided, cannot recover against the municipal authorities for losses incurred through such defect: Wharton on Negligence, sect. 440. Thus if it appear that there is danger on a piece of ice and the plaintiff voluntarily and unnecessarily undertakes to walk over it when he could plainly see it, and easily avoid it, and falls, and breaks a limb, he is precluded from recovery."

City of Erie v. Magill, 101 Pa. 616, is to the same effect. In Pittsbg. South Ry. Co. v. Taylor, 104 Pa. 306, the present Chief Justice said : " A man is as much bound to avoid a known danger on a public highway as anywhere else. Such obstructions are always liable to occur. . . . The plaintiff knew when he started for this crossing that the cars were overturned by the roadside. He further knew that a neighbor's horse had taken fright at the cars that morning. By crossing one of his own fields he could have avoided the danger without inconvenience to himself. Why did he not do so? The answer is plain from his own testimony. He trusted to his horse ; he did not believe there was any danger."

Just so in the present case. The plaintiff knew that the footway was being destroyed. She knew that men were at work taking up the planks, and that necessarily there would be obstructions in the form of loose planks and openings in the footway, but she plainly thought there was no danger, and apparently did not even look for obstructions. She had a perfectly safe way to go, by simply keeping on the path over the roadway on which she was walking. But she chose the other and more dangerous way and, of course, she took her chances. It was proved by several witnesses, and contradicted by none, that the word of warning, " danger," was posted on the bridge in several places, and this also should have put her on her guard. But the visible signs of the actual work going on, and the destruction of a large part of the footway which she says she saw, were amply sufficient to apprise her of dangers to be avoided.

In Robb v. Connellsville Borough, 137 Pa. 42, the plaintiff, a woman, sued the borough for an injury received by falling over the footway of a street crossing, raised six inches above the level of the footway upon which she was walking, and was nonsuited for contributory negligence, because she said she could have seen the obstruction had she looked where she was going, and her fall resulted from her failure so to look. Our Brother MITCHELL, delivering the opinion, said: " That the reasonable care which the law exacts of all persons whatever they do, involving risk of injury, requires travelers, even on the footways of public streets, to look where they are going, is a proposition so plain that it has not often called for adjudication. But it has been expressed or manifestly implied in enough of our own cases to constitute authority for those who need it. Thus in Barnes v. Sowden, 119 Pa. 53, the court below instructed the jury that persons who walk along the footways or cross the streets of our city are bound to use their own faculties. . . . The plaintiff was bound to use her eyes. Not that she was to keep her eyes constantly and at every moment upon the pavement, but she was bound to do what people walking along the streets ought to do as they walk the streets in order to use them safely."

In Hill v. Tionesta Twp., 146 Pa. 11, we held that one who undertakes to use a public road knowing that it is unsafe and knowing the defects which make it so, but not choosing to avoid them, although he could do so by taking another road, cannot recover against the township for an injury resulting from such defects.

It is not necessary to continue the citations. The doctrine is being constantly illustrated in every variety of circumstances. If the plaintiff had paid but slight heed to her steps she would have discovered the loose plank and avoided it, or if she had simply continued on the perfectly safe course she was pursuing on the roadway, she would not have been hurt. It was her legal duty to do both of these things, but she did neither, and hence her injury.

We are of opinion that the defendant's first and second points should have been affirmed and the case withdrawn from the jury.

Judgment reversed.