# Straight, Admrx., Appellant, *v.* B. F. Goodrich Company.

Argued March 27, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused June 25, 1946.

*J. Thomas Hoffman,* with him *Martin C. Mihm,* for appellant.

*J. Roy Dickie,* with him *Hamilton A. Robinson* and *Dickie, Robinson & McCamey,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, May 28, 1946:

This is an action for wrongful death brought by Hannah L. Straight, widow and administratrix of the estate of John W. Straight, deceased, who was fatally injured while repairing an elevator on premises occupied by B. F. Goodrich Company, defendant. The case was submitted to a jury which returned verdicts against defendant totaling $15,000. Defendant moved for judgment non obstante veredicto which was granted, on the ground that the verdicts were based on guess or conjecture, and the plaintiff appealed.

B. F. Goodrich Company, defendant, occupies a three-story building at 5740 Baum Boulevard, Pittsburgh, in which is a large freight elevator, serviced and kept in repair by Otis Elevator Company. The elevator, located at the southeast corner of the building, is 13 feet high, 12 feet wide and 21 feet deep, with its entrance facing north and extending across its entire 12-foot width. On January 25, 1944, deceased, an employee of Otis Elevator Company, was engaged in replacing an angle-iron extending from the top to the bottom of the elevator cage at its northeast corner. To facilitate the work the cage was so placed in the shaft that the floor of the cage was 9 feet below the floor level of the second floor of the building and the top of the cage was 4 feet above the second floor level. A stepladder was placed in the cage at the northeast corner, six inches west of its east wall with the bottom of the ladder resting on the floor of the cage and its top resting against, and projecting 9 inches above, the second floor of the building. The top of the cage had been removed and a wooden barrier protecting the shaft at the second floor level was raised.

Against the east wall of the second floor of the building, only 12 inches north of the north or open side of the elevator shaft, stood an unused steam or hot water radiator, 39 inches high, 8 inches wide and 8 to 10 inches long, standing upright on four three-inch high straight legs, and weighing 100 pounds. The radiator was of the type commonly used in heating buildings but in fact was not attached to the building or its heating system in any way. During the course of the repairs an employee of defendant called up the shaft for the use of the elevator and deceased responded, moving towards the cage from a point on the second floor where he was working on materials at the time. Deceased's helper, who was working with his back to the elevator, four feet from the east wall of the building and six feet north of the shaft, noticed deceased pass behind him and a moment later heard a thud but no outcry. Going to the shaft he found deceased lying unconscious on the floor of the cage with the above-described radiator lying on top of him. Deceased was removed to a hospital where he died of his injuries several hours later without regaining consciousness.

All the evidence comes from plaintiff's witnesses. Deceased's helper, who was working with his back to the elevator shaft at the time, testified to the circumstances leading up to and following the fatal accident, but there was no eyewitness to testify what occurred. Defendant offered no evidence, stating that its investigation confirmed the facts and circumstances established by plaintiff. On the evidence presented the questions arising are these: (1) Was the unattached radiator a dangerous condition on the premises which it was defendant's duty to disclose to deceased or make safe, and (2) Does the evidence measure up to the standard required to permit a jury to infer that defendant's negligence was the operative cause of the death where direct evidence of the manner of its occurrence is unavailable?

The duty owed deceased by defendant was that owed by an owner or occupier of land to a business visitor or

invitee. As pointed out in Restatement, Torts, section 332, comment (a), cited and followed in *Kulka v. Nemirovsky,* 314 Pa. 134, 139, 170 A. 261, and in *Vetter v. Great A. & P. Tea Company,* 322 Pa. 449, 454, 185 A. 613, the class of persons qualifying as business visitors is not limited to those coming upon the land for a purpose directly or indirectly connected with the business conducted thereon by the possessor, but includes as well those coming upon the land for a purpose connected with their own business which itself is directly or indirectly connected with a purpose for which the possessor uses the land, as for example "a workman who comes to make alterations or repairs on the land used for such purposes." But whether the deceased, while engaged in repairing defendant's elevator, is to be regarded as a business visitor or as a mere gratuitous licensee makes no difference in this case. In either event the law imposed upon defendant the duty either to exercise reasonable care to disclose to deceased dangerous conditions known to it and not likely to be discovered by him or to make such conditions reasonably safe: *Musto v. Lehigh Valley Railroad,* 327 Pa. 35, 39, 192 A. 888; Restatement, Torts, section 342, and section 343, comment (a). That the top-heavy, unattached radiator, weighing one hundred pounds, placed by defendant against the east wall in close proximity to the entrance into the elevator shaft, involved a recognizable risk of serious bodily harm to any person likely to come in contact with it, is a matter on which reasonable minds could not differ. Placed in such a manner as to indicate in all respects that it was a well secured, firmly attached unit of the building's heating system, it was not such an obvious defect as even a gratuitous licensee would be bound to notice. See *Kulka v. Nemirovsky,* supra, 139. Like the top-heavy lathe in the *Kulka* case it constituted a hidden menace to life and limb which defendant was obliged either to make safe or disclose. Failing to do so it is liable for the bodily harm caused thereby, whether deceased be regarded as business visitor or gratuitous licensee. And

this is so although defendant, in creating the dangerous condition, may not have foreseen the precise manner in which deceased was injured. "It might not, perhaps, have foreseen exactly how, or to what extent, injury would result" but defendant "would be held for what might in the nature of things occur in consequence of that negligence, although in advance the actual result might have seemed improbable": *Quigley v. Del. & H. Canal Co.,* 142 Pa. 388, 397, 21 A. 827. See also *Jordan v. Eisele,* 273 Pa. 95, 98, 116 A. 675, 676; *Shipley v. Pittsburgh,* 321 Pa. 494, 496, 184 A. 671; Restatement, Torts, section 435.

Cases cited by defendant holding that an occupier of land is under no duty to reconstruct or alter the premises to make them safe for licensees, or to change the method in which he conducts his activities so as to insure the licensee's safety, are not in point. Merely securing the unattached radiator or moving it to another location out of the way of persons coming onto the premises would not amount to a reconstruction or alteration; nor would so doing involve a change in the method in which defendant conducts its tire and rubber business. Likewise inapplicable are cases like *Rugart v. Keebler-Weyl Baking Co.,* 277 Pa. 408, 121 A. 198, holding that statutory duties imposed on certain types of employers by the Act of May 2, 1905, P. L. 352, and similar legislation, do not extend to the employees of an independent contractor. No breach of any statutory duty owed by defendant to its own employees is relied upon by plaintiff or in any way involved. Had defendant notified deceased's employer, Otis Elevator Company, of the dangerous condition, it may be that this would have absolved it from further obligation under our decision in *Valles v. Peoples-Pittsburgh Tr. Co.,* 339 Pa. 33, 13 A. 2d 19. The record indicates such notice was not given and defendant does not contend that it was given. Hence the *Valles* decision does not apply.

From the circumstances and general situation disclosed by the evidence it is a legitimate inference that

the radiator toppled over, carrying deceased to the floor of the cage when, unaware of its potentialities for danger, he simply brushed against it on his way to the ladder or reached out to use it to support himself as he was in the act of transferring his weight to the ladder. It cannot positively be ruled out as a possibility that deceased may have slipped, tripped or stumbled and grabbed the radiator to break his fall, as defendant suggests, but the evidence does not support this hypothesis. There is no evidence of any defect in the flooring or of any object thereon to cause deceased to stumble; there were no scuff marks or any outcry, and no disturbance of the ladder. Despite dicta to the contrary in some of our cases, it is not the rule that circumstantial evidence to establish negligence need exclude everything which the ingenuity of counsel may suggest as having possibly caused or contributed to the injuries or death: *Strobel v. Park,* 292 Pa. 200, 207, 140 A. 877. "Since proof to a degree of absolute certainty is rarely attainable in any litigated factual controversy, the law requires only that the evidence as to the operative cause of the accident be enough to satisfy reasonable and well-balanced minds that it was the one on which plaintiff relies": *Liguori v. Philadelphia,* 351 Pa. 494, 498, 41 A. 2d 563. See also *Giordano v. Clement Martin, Inc.,* 347 Pa. 61, 64, 31 A. 2d 504; *Tucker v. Pgh. Etc., Ry. Co.,* 227 Pa. 66, 69, 75 A. 991.

The evidence of defendant's negligence and the presumption of due care by deceased sufficiently made out a case for submission to the jury. This the court below did following a fair trial and adequate charge. The jury was warranted in finding that defendant was negligent qua the deceased and that its negligence was the proximate cause of death. Their verdicts, which were not excessive, should not have been set aside.

The judgment is reversed, and the record is remitted that judgments may be entered on the verdicts.

Mr. Chief Justice MAXEY, Mr. Justice DREW and Mr. Justice LINN dissent.