## Perry, Administrator, et al. *v.* Pittsburgh Railways Company, Appellant.

Argued September 30, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Con F. McGregor,* for appellant.

*John B. Nicklas, Jr.,* with him *E. B. Wolfe, Henry S. Moore* and *McCrady & Nicklas,* for appellees.

OPINION BY MR. JUSTICE JONES, November 10, 1947:

The defendant appeals from judgments entered on verdicts for the plaintiffs in suits, separately instituted by the administrator of the estate of Michael Perry, de-

ceased, and by Perry's widow, for damages for the husband's death due allegedly to the negligence of the defendant company. The latter offered no evidence at trial, contenting itself with the presentation of points for binding instructions which the learned trial judge refused. The court en banc denied motions for judgments n. o. v. and for a new trial and, from the judgments entered on the verdicts for the respective plaintiffs, the defendant appeals.

In support of its assignments of error covering the denial of the motions for judgments n. o. v., the appellant asserts that the evidence adduced by the plaintiffs is insufficient to support a finding that Perry's death was caused by the defendant's negligence and, further, that the evidence discloses that the plaintiffs' decedent was guilty of contributory negligence as a matter of law.

The assignment of the lower court's refusal of the motion for new trial as error is based upon the appellant's insupportable assertion that the verdict in favor of the plaintiff-widow (viz., $6,000) is excessive. The suggestion is so obviously without merit that the point may be appropriately disposed of in passing with but little comment. Although Perry was sixty-six years old at the time of his death, he had a life expectancy of ten and one-half years; he was strong and in good health, never having been sick a day in his life; and he had worked regularly for an aggregate annual wage slightly in excess of $1600. Just as the verdict did not offend the conscience of the court below, it, likewise, does not shock our sense of justice; and, judged by that imperative test (*Fasick v. Byerly*, 331 Pa. 85, 89, 200 A. 1), the verdict was not excessive.

About 7:30 o'clock A.M., Eastern War Time, on January 31, 1945, Michael Perry, the plaintiffs' decedent, and a companion, while on the way to work, were struck and killed by a street car of the defendant company. The accident occurred about five hundred feet west of the Moss Side Boulevard Bridge on the single track of

the defendant railway which was constructed longitudinally on and at the side of the right of way of the Pitcairn-Trafford Highway in Allegheny County. At the time of the accident, and immediately prior thereto, Perry and his companion were walking eastwardly on the street railway track. Suddenly and without warning, no bell or gong having been sounded, a street car of the defendant company, also traveling eastwardly, struck the two pedestrians from behind, killing them instantly. The street car's approach had been on a straight line for a considerable distance. Coming over a little rise or knoll, the track continued downgrade for a distance of approximately one thousand feet before reaching the point of accident. The motive power of the car had been shut off at the top of the rise, but the street car had continued to descend the downgrade at a speed of from twenty-five to thirty miles an hour. The weather was wintry, and snow, of which there was an abundance all about, was blowing in gusts. At the time in question, the street car was being operated by a student operator. The teacher was standing to the right of the student operator with one foot on the platform and the other on the step at the front door, thus causing him to face the left side of the car. The teacher was unable to see out of the window immediately in front ·of him because of its being frosted and clouded with grease. The window in front of the student operator was clear. There is direct evidence, however, that the latter was inattentive to his duty. Shortly before the accident, he was seen looking sideways and was heard talking with the teacher about buying some cigarettes at a prospective stop farther on.

As a public service railway, the defendant company possessed a superior right to the way on the tracks for the movement of its cars: *Abbie Warner v. Peoples' St.-Railway Co.*, 141 Pa. 615, 619, 21 A. 737. Its employees were chargeable, nonetheless, with the duty of exercising a certain degree of care toward persons who

might reasonably be expected to appear on the tracks from time to time. Accordingly, it is the duty of an operator of a street car to have his car under such control at all times that it may be stopped before doing injury to any person in any situation that is likely to arise in the circumstances: *Morin v. Kreidt,* 310 Pa. 90, 94-95, 164 A. 799; *Galliano v. East Penn Electric Co.,* 303 Pa. 498, 503, 154 A. 805; *Dennis v. Munyan,* 139 Pa. Superior Ct. 310, 312, 11 A. 2d 566. Whether or not the adequate control so required by the law has been exercised in a given case necessarily depends upon the attending circumstances and is, consequently, a matter for independent determination in each case as it arises: see *Galliano v. East Penn Electric Co.,* supra.

In obedience to the foregoing legal principles, we have no difficulty in concluding that the evidence in the instant case was amply sufficient to support the jury's finding that the defendant was negligent in a blamable manner. In addition to the evidence of the employees' negligence, as already pointed out, there was testimony that it was a frequent practice for pedestrians to use the tracks in the locality as a footway when unusual or extraordinary weather conditions, such as prevailed on the day of the accident, made walking on the highway dangerous, if not wholly impossible, and that the defendant's employees were aware of that practice. The case was clearly one for the jury so far as the question of the defendant's negligence was concerned.

In order to recover, it was incumbent on the plaintiffs to make out a case of the defendant's causative negligence, free and clear of contributory negligence on the part of their decedent: *Grimes v. Yellow Cab Co.,* 344 Pa. 298, 305, 25 A. 2d 294. But, in a case, such as the present, where the accident in suit resulted in death, a presumption attends the plaintiff that the decedent exercised due care for his own safety. The rule and its rationale were well stated by Justice (now Chief Justice) MAXEY in *Morin v. Kreidt,* supra, at p. 97, as fol-

lows: "When a person is killed in an accident there is a presumption arising from the general knowledge of the strength of the instinct of self-preservation and the natural desire to avoid pain and injury to oneself that the deceased at the time of the accident was exercising due care", quoted with approval in *Michener v. Lewis,* 314 Pa. 156, 158, 170 A. 272. The presumption is a rebuttable one (*Donahue v. Philadelphia Rapid Transit Co.,* 293 Pa. 253, 256, 142 A. 291) and may be offset by the defendant's direct evidence or even by evidence appearing in the plaintiff's own case. In the present instance, however, the defendant offered no evidence whatsoever; and there is not otherwise in the record anything to show that Perry did not look back at proper intervals, while walking on the track, or that he did not exercise the care required of him to be on the lookout and with ears alert for danger of an ordinarily apprehensible nature in the circumstances: see *Kennewig v. Pittsburgh Railways Company,* 239 Pa. 250, 253, 86 A. 702.

The proven facts of the accident here involved are not such as to warrant a judicial declaration that the decedent must have seen and heard the car that struck him in time to have avoided injury to himself. As already stated, no bell or gong was sounded or other warning given by the operator of the rapidly approaching car which was of a type whose relative noiselessness in certain conditions (here, it was coasting) has been judicially observed: *Kasanovich v. George et al.,* 348 Pa. 199, 201, 34 A. 2d 523. When the testimony is read in the light most favorable to the plaintiffs, as the verdicts in the case require, with the evidentiary conflicts resolved in their favor and the benefit of all material inferences reasonably deducible from the evidence given them (*Scholl v. Philadelphia Suburban Transportation Company,* 356 Pa. 217, 219-220, 51 A. 2d 732), the facts of the case with respect to the decedent's conduct while walking on the street car track do not show fault on

his part with such clarity and certainty that it can be justly said as a matter of law that he was guilty of contributory negligence: see *Caulton v. Eyre & Co., Inc.,* 330 Pa. 385, 390, 199 A. 136.

There happens to be one patent circumstance, however, which does not come within the exculpatory scope of the presumption of care afforded the decedent and that is as to his choice of the track as a place to walk. On that aspect, the appellant mistakenly contends that the facts of the instant case bring it within the rule, well settled by a long line of decisions, that "where a person, having a choice of two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover": see *Haven v. Pittsburgh & Allegheny Bridge Co.,* 151 Pa. 620, 627-628, 25 A. 311, and cases there cited for the origin and development of the rule, and *Bockstoce v. Pittsburgh Rwys. Co.,* 159 Pa. Superior Ct. 237, 241, 48 A. 2d 126, and cases there cited for its repeated reaffirmations. As plainly appears, the rule requires as one of the conditions of its applicability the existence of two distinct ways—one clearly recognizable as safe and the other as involving danger—with an attending freedom of choice of ways available to the pedestrian. The facts of the instant case manifestly render the rule presently inapplicable.

Within the width of the highway's established limits there was twenty-six feet of paved roadway, a six foot space covered with loose stones and slag and, next to that, the defendant company's single track trolley line. There were no sidewalks along the road. At the time of the accident, snow was piled on either side of the paved portion of the road to a height of two to three feet as well as on either side of the street car track. The space between the paved road and the street car track was likewise piled high with snow. Deep snow also continued to cover the roadway where there existed

approximately six ruts, each having a depth of eight to ten inches, which condition made pedestrian travel on the road extremely difficult and very dangerous. Automobiles and other vehicular traffic on the road had to move in the frozen ruts as they existed. The snow, ice and ruts were the result of a fifteen inch snow on December 11, 1944, which was followed, in turn, and augmented by additional snowfalls on Monday of each of the eight successive weeks. The space between the rails of the street car track had been cleared away by snowplows of the defendant company so that the snow on the track between the rails was but a few inches deep. There was just enough clearness on either side of the track for a street car to pass through the snow banks. Under the conditions prevailing, children attending school and men going to and from their work in the large and extensive Pitcairn Car Shop in the locality walked on the street car track.

It is readily apparent from the facts by which we are presently bound that the footway supplied by the paved road was not a "perfectly safe" one. On the contrary, it was hazardous and unsafe for pedestrian travel if, indeed, it did not present an impossible barrier to progress afoot. From the standpoint of walking conditions, it was the trolley track which offered the only safe footing although it did present risks of another type. Consequently, no way for pedestrian travel in the immediate vicinity that was clearly safe existed; and, in that situation, the reasonableness of the choice of way actually made depended upon a question of fact which was for a jury to determine. It is, of course, true that the defendant company's clearing of its track from snow in order to facilitate the passage of its cars, thereby also making the track more convenient and available for pedestrian travel, did not serve to enlarge the decedent's rights on the railway track: see *Abbie Warner v. Peoples' St.-Railway Co.*, supra, at p. 620. But, at the same time, walking longitudinally on trolley tracks located on a

616

roadway is not contributory negligence *per se: Bockstoce v. Pittsburgh Rwys. Co.*, supra, at p. 240; see also *Gilbert v. Stipa*, 157 Pa. Superior Ct. 1, 41 A. 2d 284. A pedestrian so walking is, indeed, bound to exercise a very high degree of care. Whether the care actually exercised in a given situation was adequate to the requirement is a question of fact for a jury's determination under proper instructions from the court: *Bockstoce v. Pittsburgh Rwys. Co.*, supra, at p. 240. In the present instance the learned trial judge properly submitted the material questions of fact to the jury in a fair and impartial charge to which the defendant took no exceptions in pertinent regard.

The judgments are affirmed.