## WILLIAMS v. READING CO.
### No. 9781.

United States Court of Appeals
Third Circuit.

Argued Feb. 8, 1949.

Decided May 11, 1949.

Joseph Weiner, Philadelphia, Pa. (Wilfred R. Lorry, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellant.

Henry R. Heebner, Philadelphia, Pa. (Wm. Clarke Mason, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and O'CONNELL and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The plaintiff appeals from a judgment n. o. v. entered against him on defendant's motion pursuant to Rule 50,[1] Federal Rules of Civil Procedure, 28 U.S.C.A., following a jury verdict in his favor. The question before us is whether the plaintiff adduced sufficient evidence to go to the jury on the issues of negligence of the defendant and its causal relation to the death of plaintiff's decedent, Al Williams.[2] Since all the

---

[1] There was no alternative motion for a new trial.

[2] The action herein was commenced by the widow of the decedent under the

operative facts occurred in Pennsylvania, and jurisdiction is based upon diversity of citizenship, the law of Pennsylvania applies.

██ Viewed in favor of the plaintiff, as it must be, the evidence is as follows. At about 6:20 a. m. on January 5, 1945, Williams and his brother-in-law, George Tolbert, having completed their night's work at the plant of W. C. Hamilton Paper Company, boarded defendant's local train at Miquon, Pennsylvania, bound for Philadelphia. Because of the crowded condition of the cars, Williams took a seat in the front of the last car, and Tolbert in the second or middle car. They usually left the train at the Columbia Avenue station in Philadelphia. On this occasion Tolbert alone got off at Columbia Avenue and when the train pulled out of the station he saw Williams seated in the last car, which was a combination passenger and baggage car. Williams at the time had his hat over his eyes, apparently asleep.

After Columbia Avenue, the next stations are Spring Garden Street and then the Reading Terminal, the final stop. When the train left Columbia Avenue, the doors on the left side of the cars were closed and those on the right opened; they remained open until the train reached Reading Terminal. As the train left Spring Garden Street, a trainman, who was then standing in the front end of the third car, called out "Reading Terminal next." The train, however, made a stop before the Reading Terminal at Race Street Tower to permit another train travelling in the opposite direction to cross the tracks ahead of it. Race Street Tower is about five blocks after Spring Garden Street and three blocks before Reading Terminal. The train involved here was on the westernmost track, referred to as track "G"; east of track "G" is the southbound "main" track, and east of that is the northbound "main" track, and then two other sets of tracks not relevant here. Insofar as we are concerned, the tracks are elevated above the street level.

At about 7:05 a. m., a workman found Williams lying between the two "main" tracks not far from Race Street Tower, nor far from where the train had stopped there. His head was toward Spring Garden Street, and his feet toward Reading Terminal. He was dead, and his body was cold. It was stipulated that he suffered a fractured skull.

It may be noted that Tolbert testified that it was dark when he and Williams boarded the train, and the workman who found Williams' body testified that when he came on duty at 7:00 a. m. it was not light enough to work, but that he had to wait several minutes.

All of the evidence above related is the plaintiff's who also relied on the presumption of due care applicable in death cases under the Pennsylvania rule. The defendant introduced no evidence.

██ On the facts as stated, we think the jury could reasonably conclude that the defendant was guilty of negligence under the Pennsylvania law. Accordingly, the learned trial judge, in the first instance, properly charged the jury and left the issue to it. Englehaupt v. Erie Railroad Co., 1904, 209 Pa. 182, 58 A. 154; Watters v. Philadelphia, B. & W. R. Co., 1913, 239 Pa. 492, 86 A. 1021. In the Englehaupt case, the Supreme Court of Pennsylvania said, 209 Pa. at pages 185-186, 58 A. at page 155: "* * * It is likewise the duty of the carrier to announce the name of the station on the approach of the trian, and to afford passengers sufficient time to alight with safety. If after this announcement the train for any cause makes its next stop short of or beyond the station, the conductor or brakeman should announce the fact before the passengers attempt to leave the train, and a neglect to do so will be a violation of duty for which the carrier is responsible. In Weller v. London, Brighton & South Coast Railway Company, L.

---

Pennsylvania "wrongful death" statute, 12 P.S. §§ 1601, 1602, and the Pennsylvania "survival of actions" statute, 20 P.S. § 772. Following the decision in the District Court, notice of the death of the widow was filed and substitution of the present plaintiff was permitted as the administrator of her estate.

R. 9 C.P. 126, Brett, J., says: 'Merely overshooting the platform is not negligence. But if the porter has called out the name of the station, and the engine driver has overshot the station, and the train has come to a standstill, the company's servants are guilty of negligence if they do not warn the passengers not to alight. At all events, the jury may from these facts infer negligence. If the name of the station has been called out, and the train has come to a standstill, no warning being given to the contrary, the jury may very properly say that a passenger is guilty of no want of reasonable care in getting out. He has a right to suppose that the train has reached the spot where it is intended that he shall get out.' "

This applies more especially when it is dark, as in this case, according to the Englehaupt decision.

It is true that in the case quoted there was a conductor on the platform at the time the passenger left the train. But it does not appear, as the defendant contends, that negligence may be found only where the railroad employee sees a passenger about to alight when it would be unsafe for him to do so. The Englehaupt decision makes no point of the presence of the conductor, and the language used in the opinion as well as the choice of excerpts from prior cases are broad enough to include the instant situation: e. g. Philadelphia, W. & B. R. Co. v. McCormick, 1889, 124 Pa. 427, 16 A. 848. Nor do we think that it is a decisive distinction that in this case the announcement "Reading Terminal next", was made when the train left Spring Garden Street rather than just before it reached Reading Terminal, in view of the short distance between the two stations.

The crucial question, then, is whether the jury could properly find that Williams died as a result of the defendant's negligence. On this score, the learned trial judge held that, lacking evidence to show that Williams left the train when it stopped at Race Street Tower, there was a fatal gap in the plaintiff's case which could not be filled by the presumption of due care.[3] Nevertheless, we are of the opinion that the issue was one to be resolved by the trier of fact. Van Tine v. Cornelius, 1947, 355 Pa. 584, 587, 50 A.2d 299.

Since there was no evidence that Williams was seen leaving the train, it is patent that the plaintiff's case rests on circumstantial evidence. In such a situation, we have recently said, under Pennsylvania law "it is not required that the proof eliminate every possible cause other than the one on which the plaintiff relies, but only such other causes, if any, as fairly arise from the evidence." Sweeney v. Bonacci, 3 Cir., 1949, 173 F.2d 541, 544. It is not the rule that circumstantial evidence need exclude everything which the ingenuity of counsel may suggest as having possibly caused or contributed to the death. Straight v. B. F. Goodrich Co., 1946, 354 Pa. 391, 396, 47 A.2d 605. Moreover, the plaintiff has the aid of the presumption that the decedent exercised due care for his own safety. That presumption remains in the case since there was no evidence adduced by either side to offset it. Perry v. Pittsburgh Rys. Co., 1947, 357 Pa. 608, 613, 55 A.2d 354.[4]

---

[3] The Court below said that Williams could have "(1) ridden on to the Terminal, got out there and started to walk back toward Columbia Avenue on the tracks, (2) got out at Spring Garden Street, the last stop before Race Street tower, and, sleepy or confused or for some other reason, started to walk along the tracks toward the Terminal, (3) left the train between stations while it was in motion—this he might have done either voluntarily or by falling from the platform through pure accident, illness or being pushed or jostled, or (4) got off during the momentary stop at the Race Street tower."

[4] Cf. Miller v. Gault, 1942, 345 Pa. 474, 477, 29 A.2d 71, 72, wherein the Court said: "In the absence of evidence of what occurred, plaintiff might have rested on the presumption that Mrs. Miller exercised due care, but plaintiff did not do that; he produced the evidence outlined above displacing the effect of the presumption and is bound by the evidence."

The effect of the presumption on contributory negligence is indicated in Scholl v. Philadelphia Suburban Transp. Co., 1947, 356 Pa. 217, 224, 51 A.2d 732, 736: "To take away summarily, on the ground of contributory negligence, a plaintiff's

■ While the presumption of due care, of itself, does not establish a causal connection between the defendant's negligence and Williams' death, it does materially aid the plaintiff. Thus, the jury was entitled to find that Williams did not leave the train while it was in motion. Similarly, the jury could reasonably conclude that it was contrary to the unrebutted presumption to assume that Williams left the train at Spring Garden Street or at Reading Terminal to walk along the elevated tracks in the dark. In any event, it was a jury question whether the probability of his having done so fairly arose from the evidence. Taking into consideration the darkness, the time when and the place where the body was found, the distance of that place from Spring Garden Street and Reading Terminal, the condition of the body, the coincidence of the body being near the train's stop at Race Street Tower, and the oncoming train, we think it was within the province of the jury to determine whether or not it was a fair inference that Williams left the train at any place other than Race Street Tower. Further, it is a legitimate inference, on the evidence, that Williams left the train as a result of the negligence of the defendant, and that such negligence brought about his death, either by his falling from the steps or by his being placed in a position of imminent peril, which peril came to fruition. Cf. Straight v. B. F. Goodrich Co., supra, reiterating that "the law (of Pennsylvania) requires only that the evidence as to the operative cause of the accident be enough to satisfy reasonable and well-balanced minds that it was the one on which plaintiff relies" [354 Pa. 391, 47 A.2d 608]; and, as we have already noted, the circumstantial evidence need not exclude everything which ingenuity suggests as having possibly caused or contributed to the accident.

For the reasons stated, the judgment of the District Court will be reversed, and the cause will be remanded with directions to enter judgment for the plaintiff on the jury verdict.

right to go to the jury on that question, upon the presumption of his decedent's care, requires evidence so clear, direct and positive as to preclude any difference in the minds of fair and reasonable men with regard to the decedent's negligence * * *."