**Timothy BARRETT, Jr.**

v.

**Robert ROBINSON et al.**

**Civ. A. No. 71-1650.**

United States District Court,
E. D. Pennsylvania.

Jan. 13, 1975.

**654**

Herbert Monheit, Monheit & Rosenfield, Philadelphia, Pa., for plaintiff.

Joseph W. Fullem, Jr., Bennett, Bricklin & Saltzburg, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

In this personal injury suit, following a jury verdict on the question of liability in favor of the plaintiff and against all the defendants, the defendants have moved for a Judgment Notwithstanding The Verdict or in the alternative for a New Trial. After carefully considering the grounds urged by the defendants, the Court has determined that it must deny the motions.

The injuries complained of in this lawsuit occurred as the result of an accident which took place at the Latham Hotel on February 16, 1971. Plaintiff was attending a party at the Latham Hotel and was injured when he fell from a mezzanine floor balcony while trying to exit from the building. Defendants have filed the following motions seeking relief from the jury verdict: (1) A Motion for Judgment Notwithstanding The Verdict on the ground that the plaintiff was contributorily negligent as a matter of law; (2) a Motion for a New Trial on the ground that the verdict was against the weight of the evidence; (3) a Motion for a New Trial because the verdict was against the charge of the Court.

### Defendants' Motion for Judgment Notwithstanding the Verdict

At the close of the plaintiff's case, the defendants submitted a Motion for a Directed Verdict pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, and renewed their motion at the close of all the evidence by submitting a Point for Binding Instruction to the effect that the jury must find for the defendants on the issue of liability.[1] Both the Motion for a Directed Verdict and the Point for Binding Instruction were denied by the Court. The defendants allege that these denials were error and now move for a Judgment Notwithstanding the Verdict under Rule 50(b) on the ground that the evidence establishes that the plaintiff was contributorially negligent as a matter of law.

A judgment notwithstanding the verdict is proper only where as a matter of law the evidence is not sufficient to create an issue of fact for the jury. It is well settled in this Circuit that the standard to be followed by a federal court in an action based on diversity of citizenship in determining whether the issue of the plaintiff's contributory negligence should be submitted to the jury is whether the evidence presented is sufficient for the jury to reasonably find, without resort to prejudice or guess that the plaintiff was free of contributory negligence. Kridler v.

---

[1]. It should be noted that submitting a Point for Binding Instruction to the effect that under all the evidence and the law, the jury's verdict must be for the defendant may not comply with the procedural requirements of Rule 50(b) of the Federal Rules of Civil Procedure. Eisenberg v. Smith, 263 F.2d 827 (3d Cir. 1959); Sinclair v. Countryside Builders, Inc., C.A. 71–241 (E.D.Pa.1974). However, we rest our decision on the merits of the defendants' motion.

Ford Motor Company, 422 F.2d 1182, 1183–1184 (3d Cir. 1970); Denneny v. Siegel, 407 F.2d 433 (3d Cir. 1969); Smith v. Bell Telephone Co., 397 Pa. 134, 153 A.2d 477 (1959). In considering a motion for a judgment notwithstanding the verdict, this Court is not free to weigh the evidence or pass on the credibility of witnesses, or to substitute its judgment of the facts for that of the jury. See Wright and Miller, Federal Practice and Procedure: Civil § 2524, at 544. The Court is bound to accept as true all the facts favorable to the plaintiff which tend to show a lack of contributory negligence, and draw all reasonable inferences against the defendant. Denneny v. Siegel, *supra*. It is enough to take a case to the jury on the issue of contributory negligence if the sum of the evidence leaves the issue in doubt. However, if the evidence is such that reasonable men could have no doubt, a directed verdict on the issue of contributory negligence is appropriate and judgment notwithstanding the verdict on that issue is proper, if the plaintiff moved for a directed verdict on that issue. Mroz v. Dravo Corp., 429 F.2d 1156, 1163–1164 (3d Cir. 1970); Gatenby v. Altoona Aviation Corp., 407 F.2d 443, 445–446 (3d Cir. 1969).

■ The burden of proving a plaintiff's contributory negligence is of course on the defendant. However, this does not mean that only the evidence offered by the defendant shall be considered in determining whether the plaintiff is contributorially negligent. The defendant may avail himself of any evidence supplied by the plaintiff which bears on the issue, and contributory negligence may be established by the plaintiff's evidence alone. Mroz v. Dravo Corp., 429 F.2d 1156, 1163 (3d Cir. 1970); Argo v. Goodstein, 438 Pa. 468, 265 A.2d 783 (1970).

■ Treating the evidence as we are required to do in a light most favorable to the plaintiff, the evidence shows the following: On February 15, 1971 the plaintiff attended a belated wedding reception at the Latham Hotel at the invitation of his brother-in-law, John Egan (N.T. 2–81). Plaintiff arrived with his wife sometime after 9:00 p. m. and took the elevator to the Latham Room on the mezzanine floor of the hotel. After consuming two cans of beer, he decided to leave at 12:00 midnight. (N.T. 2–82). Plaintiff walked to the elevators, pushed the button and waited about ten minutes for the elevator, which did not come. Deciding to leave by foot, the plaintiff went through what is known as the south exit, a door with an exit sign above it, which led to a storage area and toilet room. (N.T. 2–83, 2–218).[2] Thinking this was not the proper way out of the building, the plaintiff went back to the elevator and again tried to summon an elevator to the mezzanine floor. He waited another five minutes before trying a second exit, referred to as the north exit, on the other side of the elevator. (N.T. 2–84). This exit led him down a corridor, through a door, and onto an outside balcony. Once on the balcony, the plaintiff tried to open a door to his left which was locked. He then attempted to go back through the door he had come from and discovered that it had locked behind him. (N.T. 85). A third door, to the plaintiff's right, was unlocked and led into a fire tower. However, since there was no light in the tower, the plaintiff decided not to go down this stairwell. (N.T. 86). Had he chosen to go down this fire tower, the stairs would have led the plaintiff to an exit from the building. (N.T. 2–39). Once he was back on the balcony, the plaintiff began getting cold in the 25 degree temperature and start-

---

2. This route would have eventually, after some turns, led to a landing on the ground floor. (N.T. 2–37, 2–38). However, the gate at this exit was kept locked at night so egress would not, in any event, have been possible through this route. (N.T. 3–10).

ed "banging and hollering". (N.T. 86). He received no response and after about an hour of standing in the cold on the balcony he began to feel panicky. (N.T. 2–87). He then looked over the side of the balcony, and determining that the drop to the ground was only about twelve feet, decided to hang his body down from the balcony and drop to the ground. Plaintiff determined that once he was hanging over the balcony he would not have to drop more than six feet before landing on the ground. While carrying out his plan, the plaintiff lost his grip and fell, breaking his leg. (N.T. 2–89).

Viewing the evidence in a light most favorable to the plaintiff, we find that there was sufficient evidence for the jury to reasonably find, without resort to prejudice or guess, that the plaintiff, Timothy Barrett, Jr., was not contributorily negligent. The jury could have reasonably found that throughout the sequence of events which led the plaintiff to the balcony, he exercised ordinary care under the circumstances for his own safety. Once on the balcony, the plaintiff found himself in a situation in which he had the choice of traveling down an unlighted fire tower, staying on a balcony in freezing weather, or attempting a short drop from the balcony.

Defendants argue strenuously that this case falls within the rule that "where a person, having a choice of two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter, and is injured, he is guilty of contributory negligence and cannot recover." Perry v. Pittsburgh Railways Company, 357 Pa. 608, 55 A.2d 354 (1947); Flood v. Pennsylvania R. Company, 183 Pa.Super. 23, 128 A.2d 96 (1956); Uzich v. E. & G. Brooke Iron Co., 76 F.Supp. 788 (E.D.Pa.1947). Defendants enumerate the many alternative routes of leaving the hotel that were available to the plaintiff other than to drop from the mezzanine balcony, and conclude that since these alternate routes would have afforded plaintiff a safer exit than the one he chose, his choosing to drop from the balcony was contributory negligence as a matter of law.

As plainly appears, the rule advanced by defendant requires as one of the conditions of its applicability the existence of at least two distinct ways of leaving the hotel—at least one of which is clearly recognized as safe and the other involving danger—with the plaintiff having a freedom of choice. Perry v. Pittsburgh Railways Company, 357 Pa. 608, 55 A.2d 354 (1947). In light of the evidence presented in this case, the doctrine advanced by defendant is inapplicable.

It cannot be argued that attempting to leave the hotel by foot in the first instance when the elevator did not arrive was negligence on the part of the plaintiff. Only when the plaintiff was trapped on the balcony and he chose to drop to the ground can the defendants contend that the plaintiff chose a dangerous route when one of safety was available. When on the balcony, the plaintiff had three choices. He could have remained on the balcony in subfreezing temperatures, walked down the unlighted fire tower, or dropped from the balcony to the ground. Clearly, remaining outside was not a position of safety. It is also apparent that walking down an unlighted fire tower was not a "perfectly safe" choice. See Perry v. Pittsburgh Railways Company, *supra*. On the contrary, darkness is, in itself, a warning to proceed either with extreme caution or not at all, and ordinarily a person who follows an unfamiliar course in the dark and sustains personal injuries is guilty of contributory negligence. Bredder v. Leidenfrost, 134 F.Supp. 487 (Md.Pa.1955); Mogren v. Gadnas, 358 Pa. 507, 58 A.2d 150 (1948). Not only

could walking down a dark fire tower be found to be dangerous, but the plaintiff had no way of knowing whether the fire tower would lead him out of the hotel. On the basis of the plaintiff's evidence, which the jury apparently believed, there is no question that the plaintiff was "trapped" without a safe exit available to him and under such circumstances, the doctrine which the defendants advance does not apply.[3] The question of the plaintiff's contributory negligence was obviously one for the jury to determine.

### Defendants' Motion for a New Trial

Defendants have also moved for a new trial on the ground that the verdict was against the weight of the evidence. It is, of course, the duty of the Court upon a motion for a new trial to see that the verdict was not influenced by partiality or prejudice and that there is no miscarriage of justice in the verdict as given by the jury. Cheffey v. Pennsylvania R. Co., 79 F.Supp. 252 (E.D.Pa.1948); Clewell v. Pummer, 388 Pa. 592, 131 A.2d 375 (1957). Although the granting or refusing of a new trial on the ground that the verdict is against the weight of the evidence is a matter addressed to the sound discretion of the trial judge, the Court must abstain from interfering with the verdict unless it is quite clear that the jury reached a seriously erroneous result. The credibility of witnesses is peculiarly for the jury and the Court cannot grant a new trial merely because the evidence was sharply in conflict. Lewin v. Metropolitan Life Insurance Co., 394 F.2d 608 (3d Cir. 1968). See generally 6A Moore's Federal Practice, § 59.08 [5], at 59–159 (2d

Ed. 1974). The Court must be especially cautious not to infringe upon the prime function of the jury where the subject matter of the litigation is simply and easily understood by any intelligent layman. In a case such as the contest now before this Court, the main function of the jury is to determine the credibility of the witnesses, i. e., what testimony is to be believed. Lind v. Schenley Industries, Inc., 278 F.2d 79 (3d Cir. 1960).

Defendants contend that the testimony adduced at trial in support of the plaintiff's case came primarily from "interested witnesses" and that their version of the case was supported by "disinterested witnesses" and hence supported by the weight of the evidence. Among these disinterested witnesses was a sales engineer for a firm which serviced the Latham Hotel's elevators at the time of the alleged accident. This witness testified that the elevators were not serviced on February 15 or 16, 1971, the days of the events which led to this lawsuit. (N.T. 3–19). This testimony specifically contradicted the testimony of the plaintiff's witness, John Egan, who testified that the elevators had been serviced on February 15, 1971. (N.T. 2–117). The other disinterested witness was an employee of the Latham Hotel who testified that he was on duty the night of the accident and that no one reported any difficulty with the operation of the elevators. (N.T. 3–5). Of course, it is quite possible that the Latham Hotel's employee could be classified as interested.

Assuming that all the witnesses for the plaintiff were "interested" in the case, it is beyond question that they

---

3. The applicable rule is that, if the alternative route (the unlighted fire tower) has dangers of its own, and the dangers of the route actually taken (droppong from the balcony) are not so great and obvious as to de- ter ordinarily prudent and careful people from using it, the question of contributory negligence is for the jury. Scurco v. Kart, 377 Pa. 435, 105 A.2d 170 (1954).

658

were competent to testify, and the extent of their interest in the case would only affect their credibility. The jury's main function in this case was to determine the credibility of the witnesses appearing before it. If the plaintiff Barrett's testimony and that of his witnesses was deemed credible, the plaintiff presented a convincing case. We must conclude that the jury did believe the testimony of plaintiff and that of his witnesses and the Court will not substitute its judgment for that of the jury. See Lind v. Schenley Industries, Inc., 278 F.2d 79, 91 (3d Cir. 1960).

█ The final contention of the defendants is that the jury's verdict was against the Court's charge concerning contributory negligence. As indicated earlier in this memorandum, we find that the jury could have found plaintiff free of contributory negligence.

Second, the defendants claim that the jury returned a verdict contrary to the charge of the Court with respect to the Court's charge that "it is negligence for a person to place himself in a position of danger when a position of safety is equally available to him", and "the plaintiff who chooses the risk of a dangerous position when safer positions are clearly available is guilty of contributory negligence." (N.T. 3–55). As heretofore stated, the jury concluded under the facts of this case that this doctrine did not apply. The Court therefore finds that the verdict was not against the charge of the Court.

Accordingly, the following Order is entered:

### ORDER

And now, this 13th day of January, 1975, it is ordered that defendants' Motion for a Judgment Notwithstanding the Verdict and defendants' Motion for a New Trial are Denied.